## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NEW LIGHT CHURCH WORLD OUTREACH AND WORSHIP CENTERS, INC., 11233 Crown Park Drive Houston, TX 77067, | ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| MARK W. EVERSON, in his official capacity as Commissioner, Internal Revenue Service; KEVIN BROWN, in his official capacity as Deputy Commissioner for Services and Enforcement, Internal Revenue Service; and the INTERNAL REVENUE SERVICE, 1111 Constitution Avenue, NW Washington, DC 20224, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Case: 1:07-cv-00750
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 4/24/2007
Description: New Light v. Everson

## COMPLAINT FOR WRIT OF MANDAMUS

This is an action in the nature of mandamus challenging the Defendants' failure to comply with the specific protections provided by Congress in section 7611 of the Internal Revenue Code of 1986, 26 U.S.C. 7611 ("I.R.C." or the "Code").[1] For its complaint in this action, the Plaintiff, by its undersigned attorneys, alleges the following:

---

[1] Unless otherwise specified, all section references herein are to the Code or to the Treasury Regulations issued thereunder.

DOC# 280768

**Jurisdiction and Venue**

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1361,

because this is a mandamus action to compel officers of the United States and/or an agency of

the United States to perform a duty owed to the Plaintiff.

2.      This Court also has jurisdiction pursuant to 28 U.S.C. § 1331, because this is a

civil action arising under the laws of the United States.

3.      The relief requested is authorized pursuant to 28 U.S.C. § 1651 (All Writs Act).

4.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(e) because the

Defendants are an agency of the United States and officers of that agency acting in their

official capacity, the Defendants may be found within this judicial district, and a substantial

part of the events or omissions giving rise to the claim occurred in this judicial district.

**Parties**

5.      The Plaintiff in this action is New Light Church World Outreach and Worship

Centers, Inc., (the "Church" or "Plaintiff"), an organization exempt from taxation under

section 501(c)(3).  The Church, one of the largest African-American churches in the country,

has over 28,000 members.  Its principal place of business is 11233 Crown Park Drive,

Houston, TX 77067.

6.      Defendant Mark W. Everson ("Commissioner") is named in his official capacity

as Commissioner of the Internal Revenue Service.  His principal place of business is 1111

Constitution Avenue, NW, Washington, DC 20224.

7.      Defendant Kevin Brown ("Deputy Commissioner") is named in his official

capacity as Deputy Commissioner for Services and Enforcement of the Internal Revenue

2

Service.  His principal place of business is 1111 Constitution Avenue, NW, Washington, DC 20224.

8.      Defendant the Internal Revenue Service ("IRS") is an agency of the United States.  Its principal place of business is 1111 Constitution Avenue, NW, Washington, DC 20224.

### Statement of Facts

*The Requirements of Section 7611*

9.      To protect churches from unnecessary and overly intrusive IRS review, section 7611 imposes strict procedural safeguards and places limits on the IRS's authority when it examines religious institutions.

10.     Recognizing the core First Amendment rights at stake, Congress, in 1969, enacted section 7605(c), the statutory predecessor of section 7611, which provided that certain examinations of churches could not be initiated until an "officer no lower than a principal internal revenue officer for an internal revenue region" believed the audit was appropriate.

11.     In 1984, Congress reiterated its concerns about the IRS and churches when it broadened the statutory protections accorded to churches in church inquiries and examinations with the enactment of section 7611.  Congress enacted these provisions "[b]ecause of the sensitive relationship between church and state . . . ."  Joint Committee on Taxation, *Overview of Tax Rules Applicable to Exempt Organizations Engaged in Television Ministries*, J.C.S. 21-87 (1987).

12.    Section 7611 imposes unique requirements on the IRS even before a church audit begins.  The IRS is not permitted to examine a church until the agency has first conducted a "church tax inquiry" in accordance with strict procedures.  I.R.C. § 7611(b).

13.    Section 7611(a)(2) requires that, before the IRS may initiate a church tax inquiry, an appropriate high-level Treasury Department official must reasonably believe (on the basis of facts and circumstances recorded in writing) that a church is either not entitled to exemption under section 501(a) or has engaged in activities subject to tax.

14.    Section 7611(h)(7) defines "appropriate high-level Treasury official" as "the Secretary of the Treasury or any delegate of the Secretary whose rank is *no lower than that of a principal Internal Revenue officer for an internal revenue region.*"  (Emphasis added).

15.    The Conference Report from the 1984 legislation further illuminates the language of the statute: "the IRS may begin a church tax inquiry only if the IRS Regional Commissioner (or higher official) reasonably believes, on the basis of facts and circumstances recorded in writing, that the organization (1) may not qualify for tax exemption as a church, or (2) may be carrying on an unrelated trade or business . . . or be otherwise engaged in taxable activities." H.R. Conf. Rep. 98-861, 1101.

16.    In language mirroring the statute and legislative history, the Treasury Regulations under section 7611 further provide that the IRS "may begin a church tax inquiry only when the appropriate Regional Commissioner (or higher Treasury official)" makes the "reasonable belief" determination. 26 C.F.R. § 301.7611-1, Q&A (1).

17.    The procedures described in paragraphs 12 through 16, above, ensure that officials in a position to consider the broad policy implications of their actions make the

4

decision to initiate a church tax inquiry. Review by such high-level officials is a key component of the set of the statutory safeguards that Congress enacted to protect churches from overly intrusive IRS review.

18. When section 7611 was enacted and the regulations under it were promulgated, a Regional Commissioner was the highest level of career IRS employee, reporting directly to the Deputy Commissioner and Commissioner. A Regional Commissioner was far removed from day-to-day field activities and any audit decisions involving specific taxpayers. By requiring this senior official to make the determination, the procedures described in paragraphs 12 through 16, above, ensured that the significant policy implications of initiating a church tax inquiry would be considered in every instance.

19. Pursuant to the Internal Revenue Service Restructuring and Reform Act of 1998, P.L. No. 105-206, the IRS was restructured, and internal revenue regions were abolished and the position of Regional Commissioner was eliminated. Neither section 7611 nor the regulations under it have been amended to reflect the restructuring, and, accordingly, the current references in both the statute and the regulations no longer comport with the IRS's structure. The statute and regulations, however, clearly provide for an alternative process in initiating a church tax inquiry: a higher official, for instance the Commissioner or the Deputy Commissioner of the IRS, may make the reasonable belief determination.

20. Like the old Regional Commissioners, the Commissioner and Deputy Commissioner are well aware of the policy implications of examining religious institutions and would make the determination in light of these concerns, thereby upholding the language and spirit of section 7611.

21.     Not only do the Treasury Regulations under section 7611 prohibit the IRS from initiating a church tax inquiry unless the agency follows the proper procedures, but the Regulations also prevent the IRS from using information it obtained from a church in violation of 7611 as the basis of a reasonable belief determination: "[i]nformation received by the Internal Revenue Service at its request may not be used to form the basis of a reasonable belief to begin a church tax inquiry, unless the Service's request is made within the procedures of section 7611 . . . ."  26 C.F.R. § 301.7611-1, Q&A (1).

*The IRS Does Not Follow the Requirements of Section 7611*

22.     Despite the clear language requiring a high-level official to make the reasonable belief determination, the IRS has repeatedly disregarded the language of the statute and the regulations.

23.     On or about November 8, 2000, the IRS issued Delegation Order 193, which provided that the Compliance Services Field Directors would act as "Regional Commissioners" for a number of items, "except where prohibited by law . . . ."  Delegation Order 193 did not specifically refer to section 7611.   A copy of Delegation Order 193 is attached hereto as Exhibit A.

24.     In June 2004, the IRS amended the Internal Revenue Manual to purport to authorize the Director of Exempt Organization Examinations to make the reasonable belief determination.  I.R.M. § 4.76.7.4.  A copy of Internal Revenue Manual § 4.76.7.4 is attached hereto as Exhibit B.

25.     The procedure described in paragraphs 23 through 24, above, and in the cited section of the Internal Revenue Manual is contrary to both the language and the intent of

section 7611. The Director of Exempt Organizations Examinations is not a high-level

Treasury official, with duties and responsibilities comparable to those formerly held by a

Regional Commissioner. A Regional Commissioner reported directly to the Deputy

Commissioner and the Commissioner and had broad responsibility for all aspects of tax

administration in a given region. In contrast, the Director of Exempt Organizations

Examinations, in the lowest tier of IRS executive positions, reports to an official several levels

below the Commissioner and has a relatively narrow area of responsibility.

26.     In an Internal Legal Memorandum, the IRS recently confirmed this ongoing, *ad

hoc* procedure established in the Internal Revenue Manual and explicitly claimed to assign the

reasonable belief determination to the Director of Exempt Organizations Examinations.

I.L.M. 200623061 (May 9, 2006). A copy of Internal Legal Memorandum 200623061 is

attached hereto as Exhibit C. The IRS has not, however, amended the regulations under

section 7611 or made any other adjustment subject to the public notice and comment

procedures to change the delegation of the reasonable belief determination.

27.     On at least one occasion, the Director of Exempt Organizations Examinations

further delegated the reasonable belief determination to her subordinates within the IRS,

including the specific reasonable belief determination involving the Plaintiff's church tax

inquiry.

28.     R. C. Johnson, then-Director of Exempt Organizations Examinations, signed a

"designation" on or about October 26, 2004 in which she purported to authorize LaPaula

Davis, Manager of Exam, Programs, and Review, to act as the Director of Exempt

Organizations Examinations. This designation was "limited to signature authority on matters

relating to church tax inquiries and/or church tax examination [sic] as defined in IRC 7611"

for the time period between October 25, 2004 and December 31, 2004.

*The IRS Followed Improper Procedures in Initiating the Church Tax Inquiry of Plaintiff*

29. On or about December 14, 2004, the IRS sent the Church a Notice of Church

Tax Inquiry purporting to initiate a church tax inquiry under section 7611(a) (the "Inquiry

Notice"). A true and correct copy of the Inquiry Notice dated December 14, 2004 is attached

hereto as Exhibit D.

30. The Inquiry Notice was signed by "L. P. Davis for R. C. Johnson, Director,

Exempt Organizations Examinations."

31. On or about May 16, 2005, the IRS sent the Church a Notice of Church

Examination. A true and correct copy of the Notice of Church Examination dated May 16,

2005 is attached hereto as Exhibit E. As of the date of this Petition, the IRS is continuing to

examine the Church.

*The Church Does Not Have Any Other Recourse To Challenge the Violations of Section 7611*

32. The Church has repeatedly attempted, unsuccessfully, to persuade the IRS to

remedy its failure to comply with section 7611.

33. On or about January 11, 2005, shortly after being contacted by the IRS, the

Church, through its counsel, wrote a letter to Revenue Agent Viris Pownell-Williams to ask

about the IRS's compliance with section 7611. A copy of the letter dated January 11, 2005 is

attached hereto as Exhibit F.

34. On or about January 25, 2005, Ms. Pownell-Williams sent a letter to the Church

in response. In the letter, the IRS asserted that the Director of Exempt Organizations

8

Examinations or an authorized individual acting for the Director of Exempt Organizations Examinations, which would include Ms. Davis, are sufficiently high-level Treasury officials for the purposes of section 7611 and, therefore, are authorized to make the reasonable belief determination. A true and correct copy of the letter dated January 25, 2005 is attached hereto as Exhibit G.

35.    On or about January 27, 2005, Michael K. Park, General Attorney in the Office of Associate Chief Counsel, Tax Exempt and Government Entities, sent the Church a facsimile of the October 26, 2004 designation, which purported to authorize Ms. Davis to make the reasonable belief determination for the time period between October 25, 2004 and December 31, 2004. A true and correct copy of the facsimile dated January 27, 2005 is attached hereto as Exhibit H.

36.    On February 28, 2006, the Church, through its counsel, wrote a letter to Ms. Pownell-Williams to express its concerns about the IRS's failure to comply with section 7611 and its underlying regulations. In the letter, the Church requested that the IRS follow the procedures set forth in section 7611 and reissue the authorization of inquiry for the examination of the Church. A true and correct copy of the letter dated February 28, 2006 is attached hereto as Exhibit I.

37.    On March 22, 2006, the Church, through its counsel, wrote another letter to Ms. Pownell-Williams to reiterate its concerns regarding the procedural infirmities of the IRS's investigation. The Church again requested that an appropriately high-ranking official within the IRS revisit the threshold reasonable belief determination. A true and correct copy of the letter dated March 22, 2006 is attached hereto as Exhibit J.

38.    On March 23, 2006, the Church's counsel participated in a conference call with Ms. Pownell-Williams, Mr. Michael Glass, Acting Group Manager and Ms. Pownell-Williams' supervisor, and Ms. Donna Palmer, Area Counsel's Office, to discuss the IRS's non-compliance with section 7611. Ms. Palmer stated that Delegation Order 193 authorized the Commissioner to delegate to Directors any responsibilities that had previously been delegated to Regional Commissioners.

39.    The Church has also asked the IRS to issue its requests for information as administrative summonses so the Church could challenge the procedural aspects of the IRS's actions in court. Section 7611 provides that a summons enforcement proceeding may be used to challenge the IRS's failure to comply with the specific protections provided by Congress in section 7611. I.R.C. § 7611(e). The IRS never responded to the Church's request and has never issued administrative summonses to the Church.

40.    On July 5, 2006, the Church, through its counsel, wrote a letter to Ms. Pownell-Williams again objecting to the IRS's failure to comply with section 7611 and to formally request that all outstanding Information Document Requests be reissued in the form of administrative summonses. In the letter, the Church informed the IRS that should the IRS move to enforce the summonses, the Church "anticipate[s] that we will raise the procedural defect in court." A true and correct copy of the letter dated July 5, 2006 is attached hereto as Exhibit K.

41.    On January 31, 2007, the Church, through its counsel, wrote a letter (erroneously dated January 31, 2006) to Ms. Pownell-Williams to reiterate its concerns, once again, about the IRS's failure to comply with section 7611. As in the previous letters, the

Church requested that an appropriately high-ranking official within the IRS reauthorize the church tax inquiry. A true and correct copy of the letter written January 31, 2007 is attached hereto as Exhibit L.

42. On March 19, 2007, the Church's counsel participated in a conference call with Ms. Pownell-Williams, Mr. Glass and Ms. Palmer. Ms. Palmer stated that the IRS appropriately followed the requirements set forth in section 7611 and the underlying regulations, even though Ms. Davis signed the Inquiry Notice. In that conversation, Ms. Palmer emphasized the significance of the October 26, 2004 "designation" authorizing Ms. Davis to initiate a church tax inquiry and refused to consider the significance of the limitations contained in that document or its appropriateness in view of the unambiguous language of the statute and regulations with regard to the high level of authorization required for a church inquiry.

43. The Church has repeatedly asked the IRS to remedy its violations of section 7611. The Church has also asked the IRS to issue summonses to the Church so the Church could challenge the IRS's actions in accordance with section 7611. Both efforts have been unsuccessful.

## **Claim for Relief**

44. The Plaintiff hereby re-alleges and incorporates by reference Paragraphs 1 through 43 inclusive as if fully set forth herein.

45. A plaintiff is entitled to a writ of mandamus if:

    a. The plaintiff has a clear right to relief;

    b. The government has a clear duty to act; and

     c.  There is no other adequate remedy available to the plaintiff. *See, e.g.,* *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002).

46.    The Church has a clear right to the unambiguous procedural protections provided to religious institutions by section 7611.

47.    The IRS has failed or refused to comply with section 7611, impermissibly infringing on the Church's crucial First Amendment freedoms.

48.    Because the IRS has refused to issue administrative summonses to the Church, the Plaintiff has no recourse, other than petitioning for a writ of mandamus, to challenge the IRS's failure to comply with section 7611.

49.    The Plaintiff is entitled to a writ of mandamus directing the Defendants to comply with the specific language of section 7611 and the corresponding Treasury Regulations by requiring the Commissioner or Deputy Commissioner to make the reasonable belief determination without regard to any information obtained during the period in which the IRS was not in compliance with section 7611.

50.    The Plaintiff is also entitled to a writ of mandamus directing Defendants to reassign any inquiry or examination of the Plaintiff to a new IRS Exam Group to ensure that such an inquiry or examination will not be tainted by information the Defendants improperly obtained during the current inquiry and examination.

**WHEREFORE**, the Plaintiff hereby requests the following relief:

    a.  A writ of mandamus directing the Defendants to comply with the specific language of section 7611 and its corresponding Treasury Regulations by requiring the Commissioner or Deputy Commissioner to make the reasonable

belief determination without regard to any information obtained during the period in which the IRS was not in compliance with section 7611;

b.  A writ of mandamus directing the Defendants to reassign any inquiry or examination of the Plaintiff to a new IRS Exam Group;

c.  Its costs and attorneys' fees, to the extent allowed by law; and

d.  Such other and further relief as the Court may direct.


Respectfully submitted

NEW LIGHT CHURCH WORLD
OUTREACH AND WORSHIP
CENTERS, INC.

By its Counsel,


Date: 4/24/07

Christopher S. Rizek, DC Bar No. 370796
CAPLIN & DRYSDALE, CHTD.
Suite 1100
One Thomas Circle, N.W.
Washington D.C. 20005
(202) 862-8852
csr@capdale.com

# EXHIBIT A



D.O. No. 193REV6, 2000 WL 33962890 (IRS DLO)                    Page 1

(Cite as: D.O. No. 193REV6, 2000 WL 33962890 (IRS DLO))

**H**
D.O. No. 193REV6, 2000 WL 33962890 (IRS DLO)

Internal Revenue Service (I.R.S.)
IRS DLO
Delegation Order

DELEGATION OF AUTHORITY

Effective Date: November 8, 2000

**Authorization to Perform Functions of the Commissioner**

**Authority:** To perform any function the Commissioner is authorized to perform.

**Delegated to:** Deputy Commissioner.

**Authority:** To perform those functions the Commissioner is authorized to perform which arise out of, relate to, or concern the respective activities or functions administered by the delegated officials. Each of these officials will exercise this authority in his or her own capacity and under his or her own title and is responsible for referring matters to the Commissioner for action when appropriate.

**Delegated to:** Assistant Deputy Commissioners, Division Commissioners and Chiefs.

**Redelegation:** The authority in this order may not be redelegated.

**Authority:** To take actions previously delegated to District Directors, **Regional Commissioners,** Directors of Service Centers, and Assistant Commissioners by Treasury Regulations, Treasury Decisions, or Revenue Procedures for matters under their jurisdiction or cases under their responsibility; and to delegate same to officers and persons under their supervision, except where prohibited by law or where inconsistent with delegations reprinted in

IRM 1.2, Section 2.

**Delegated to:** Assistant Deputy Commissioners, Division Commissioners; Chiefs; and Directors, Submission Processing Field, Compliance Services Field, and Accounts Management Field.

**Redelegation:** The officials identified in paragraph 7 may redelegate the authority provided in paragraph 6 as to matters under their jurisdiction and cases under their responsibility.

**Source of Authority:** Treasury Order No. 150-10; Treas. Reg. 301.7701-9; I.R.C. § 7701(a).

To the extent that the authority previously exercised consistent with this order may require ratification, it is hereby approved and ratified. This order supersedes Delegation Order No. 193 (Rev. 5), effective August 29, 1996 (as amended November 24, 1999).

Signed:

Charles O. Rossotti
Commissioner

D.O. No. 193REV6, 2000 WL 33962890 (IRS DLO)
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B



Internal Revenue Manual
Part 4 - Examining Process
Chapter 4.76 - Exempt Organization Examination Guidelines
4.76.7 - Church Tax Inquiries and Examinations - IRC § 7611
4.76.7.4 - Church Tax Inquiry

4.76.7.4 - Church Tax Inquiry (06-01-2004)

(1) A church tax inquiry is defined as any inquiry to a church (other than an examination) that serves as a basis for determining whether the organization qualifies for tax exemption as a church, or whether it is carrying on an unrelated trade or business or otherwise engaged in activities subject to any IRC tax. An inquiry as to whether an excess benefit transaction has occurred between a church and a disqualified person also constitutes a church tax inquiry.

(2) A church tax inquiry commences when the IRS requests information from a church other than routine requests for information discussed in IRM 25.5.8.4.1 or inquiries regarding matters that do not primarily concern the tax status or liability of the church itself, discussed in IRM 4.76.7.3 above.

(3) The IRS may begin a church tax inquiry only when the Director, EO Examinations reasonably believes that:
     (a.) The organization may not be exempt as a church under IRC §§ 501(a) and 170(b)(1)(A)(i),
     (b.) The organization may be carrying on an unrelated trade or business within the meaning of IRC § 513 or may be otherwise engaged in activities subject to any IRC tax, or
     (c.) The organization my have engaged in an excess benefit transaction under IRC § 4958.

(4) IRC § 7611 imposes strict time limits on both church tax inquiries and church examinations. The IRS cannot send a notice of examination until at least 15 full calendar days after sending the notice of inquiry. If the IRS does not send a notice of examination within 90 calendar days from the date of the notice of tax inquiry, the IRS must terminate the inquiry with no change to the organization's tax status or liability. The 90-day time limit may be suspended by certain circumstances discussed in IRM 4.76.7.9.1.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C



IRS CCA 200623061                                                    Page 1

IRS CCA 200623061, 2006 WL 1581073 (IRS CCA)


**C**

                          Internal Revenue Service (I.R.S.)

                              Chief Counsel Advisory

                              Issue: June 9, 2006
                                 May 9, 2006


Section 7611 -- Restrictions on Church Tax Inquiries and Examinations

      7611.00-00 Restrictions on Church Tax Inquiries and Examinations

CC:TEGE:EOEG:E01:

PUBWE-113519-06

to: Deputy Area Counsel (Tax Exempt and Government Entities) CC:TEGE:GLGC:DAL

from: Senior Technician Reviewer (Exempt Organizations Branch 1) CC:TEGE:EOEG:E01

subject: Procedural Matters Related to IRC Section 7611 Follow-Up Examinations and
Delegation of Authority

   **Issue (1)**: If the IRS concludes at the end of an examination under section 7611
of the Internal Revenue Code that a church has intervened in a political campaign,
but the IRS is not revoking the church's tax exempt status, can the examination
function refer the church to the Review of Operations Unit for follow-up in the
coming election cycle?

Overview and Section 7611(a) Reasonable Belief Rule

   Congress added section 7611 to the Internal Revenue Code by the Tax Reform Act
of 1984. By enacting section 7611, Congress intended to protect churches from
undue interference from the IRS and to minimize IRS contacts with churches to only
those necessary to insure compliance with the tax laws. Section 7611 limits the
time and types of contacts the IRS may utilize to determine compliance. Section
7611(a)(1) provides that the IRS may begin a church tax inquiry if "an appropriate
high-level Treasury official reasonably believes" that the church may not qualify
for tax exemption. Section 7611(f) generally provides that a church inquiry or
examination on the same or similar issues within 5 years of the earlier inquiry or
examination needs to receive higher level approval before a subsequent inquiry can
begin. [FN1]

   In our view, under section 7611, once an inquiry or examination involving a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IRS CCA 200623061, 2006 WL 1581073 (IRS CCA)

church is closed, the IRS action with respect to the organization on the same issue is final and any action with respect to any subsequent allegations must comply with the procedures of section 7611. This includes the basic requirement under section 7611(a) that IRS needs a reasonable belief before it can begin a later examination of the church. It is our view that the statute does not intend to permit use of the prior inquiry or examination and its outcome by itself in determining whether a reasonable belief exists regarding a subsequent allegation. The fact that a church was revoked for an earlier year, given a strong advisory, or assessed an excise tax does not allow us to start an inquiry several years later unless we have a reasonable belief under section 7611(a)(2) based on a subsequent allegation and information received in connection with it from a referral or from public sources. If the prior allegation or the outcome of the prior examination were sufficient to establish a new reasonable belief, then a single credible allegation could give the IRS perpetual authority to examine a church. Although there is no suggestion that anyone intends to use the old allegation or examination outcome, by itself, to create a basis for reasonable belief, the use of that information to any degree in forming a reasonable belief could be controversial given the policy underlying the statute. Looking to a new allegation for purposes of forming a reasonable belief for a subsequent inquiry will avoid raising questions about the legality of the inquiry under section 7611(a)(2).

   This approach does not mean that the official responsible for determining reasonable belief is precluded from having access to administrative files or other information about the prior audit history of the church. This information is relevant in determining whether the proposed subsequent examination is on the same or a different issue than the previous examination. (As discussed below, if it is on the same or a similar issue a higher level of review is generally required before commencing the subsequent inquiry or examination.) This information regarding the previous allegation and examination also assists in providing institutional consistency and may also be considered in setting priorities for the use of resources if examination resources preclude inquiries in all church cases where there is a reasonable belief under section 7611(a). Certainly there is a risk that a church could challenge the access or use of prior audit information by the official responsible for determining reasonable belief, but that is in effect questioning whether the official's determination of reasonable belief was otherwise based upon adequate or reliable information related to the new allegation. In all cases where we are considering a follow-up church tax inquiry, we believe we will satisfy the requirements of section 7611 for opening a church tax inquiry if the information related to the new allegation is sufficient to support reasonable belief that an examination is warranted regardless of the church's prior audit history.

Section 7611(f) Five Year Rule

   Any action involving a subsequent church inquiry needs to comply with the limitations on additional inquiries and examinations under section 7611(f). Section 7611(f) generally provides that a church inquiry or examination on the same or similar issues within 5 years of the earlier inquiry or examination needs to receive higher level approval before a subsequent inquiry can begin. Treas.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IRS CCA 200623061                                                    Page 3

IRS CCA 200623061, 2006 WL 1581073 (IRS CCA)

Reg. § 301-7611 Q&A 16 provides that the higher signature level authority is the Assistant Commissioner (Employee Plans and Exempt Organization). Pursuant to Delegation Order 193 (Rev. 6) (11/08/2000), that authority is now delegated to the Division Commissioner (Tax Exempt and Government Entities). [FN2] Section 7611(f)(1)(A) provides an exception to this higher level signature requirement where the earlier inquiry or examination resulted in an adverse action (including revocation or notice of deficiency). However, it is important to note that section 7611(f)(1)(A) does not remove the need for a reasonable belief under section 7611(a)(2) to start the subsequent inquiry.

    In determining whether a subsequent inquiry during the 5 year period discussed above involves the same or similar issues, Q&A 16 provides that "substantive factual issues involved in the two examinations, rather than legal classifications" govern whether a subsequent inquiry involves the "same or similar" issues. It follows from Q&A 16 that if the subsequent inquiry is on political campaign intervention, it is not a similar issue to the earlier political campaign intervention examination unless it is factually similar to the issue in the prior examination. It is our view that a subsequent inquiry is similar to the prior examination if they both involve a specific type of political campaign intervention, such as voter guides, a sermon, or a campaign contribution. It is not clear what other kinds of factual similarities would trigger the requirement for higher level approval. For example, if a church had been examined for implied advocacy for a candidate in a church publication, and a subsequent allegation was made in a different year that the church was engaging in implied advocacy for a different candidate during a sermon, a taxpayer might argue that there were similar issues even though the concrete activities are different. If EO Examinations has any doubt as to whether a subsequent church tax inquiry requires higher level approval where both the first and the second inquiries involve alleged political campaign intervention, and if the volume of such cases remains very low, it can elevate such a case involving subsequent inquiries during the five-year period to a higher level. Alternatively, Counsel is available to provide its opinion as to whether the issues are the same or different in specific cases.

    Section 7611(f)(1)(B) also provides an exception from the higher level signature requirement for a subsequent inquiry where the earlier inquiry or examination resulted in "a request by the Secretary for any significant change in the operational practices of the church." The statute is silent as to whether the organization must have adopted the requested changes. However, it was likely assumed that if the church did not reassure the IRS on future compliance, the church's exemption would have been revoked. It seems unlikely the authors of the statute would have anticipated closing an unagreed case with a written advisory. Therefore, we believe that the exception in section 7611(f)(1)(B) is best read as applying where IRS requested changes and the organization committed to make changes to its policies regarding political campaign intervention as part of the earlier inquiry or examination.

    Where in the prior examination IRS concluded political campaign intervention occurred and requested changes, but the church disputed the IRS conclusion, and IRS closed the inquiry or examination with an advisory, it is our view that section 7611(f)(1)(B) does not apply. Although the language of the statute speaks

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IRS CCA 200623061, 2006 WL 1581073 (IRS CCA)

only to the request for changes and is silent on the organization's response, we
believe the organization's acquiescence is assumed. Therefore, we believe a higher
level of review would be required if a subsequent inquiry were proposed under
circumstances where the church disputed that it had violated the law in the period
covered by the first exam. There may also be uncertainty as to whether the
exception in section 7611(f)(1)(B) applies where the church already had language
in their policies and procedures forbidding political campaign intervention and
the IRS "requested" a clarification of the interpretation of political campaign
intervention as applied to the specific incident or incidents that served as the
cause for the inquiry or examination. It is not clear whether a request for a
clarification is a request for a change. Again, if EO Examinations wants certainty
in these cases, it will obtain the higher level approval for the subsequent
examination.

   In sum, the potential need for higher level approval arises whenever the
following circumstances are present:
      • both the initial and the subsequent allegations involve potential political
campaign Intervention;
      • the subsequent inquiry would fall within the five-year period; and
      • the prior examination did not result in revocation or assessment of tax.

   Elevating the approval to the Division Commissioner will avoid the risk that a
subsequent inquiry or examination will be challenged by the church as violating
section 7611(f)(1). However, that level of approval is not required if the facts
in the cases are not the same or similar.

Data Collection for a Possible Subsequent Inquiry

   Before a subsequent inquiry can begin IRS needs a reasonable belief under
section 7611(a) that the church is not exempt from tax or may be otherwise engaged
in activities subject to tax. It is important to consider the scope of IRS'
ability to collect any data beyond acting as a passive recipient of allegations
sent to IRS by third parties. Treas. Reg. § 301-7611 Q&A 1 states that
"[i]nformation received by the Internal Revenue Service at its request may not be
used to form the basis of a reasonable belief to begin a church tax inquiry...."
It is our view that this reference applies to active requests by IRS to a church
or an individual connected to a church for documents or information that is
otherwise not generally available to the public, but does not apply to the perusal
of documents available to the public by IRS without request to the church or
individuals connected with the church. We recognize that churches may argue that
by taking affirmative steps to look for violations regarding whether a church is
engaged in activities subject to tax the IRS is violating the underlying intent of
section 7611. We find this argument unpersuasive. If the IRS is not able to
consider the same information and material that is available to the general
public, it would be limited to remaining passive and considering only that
information that is referred to it by third parties, who may not necessarily be
the most impartial or reliable sources. The IRS could not respond to information
or allegations published or broadcast widely to hundreds of thousands of people in
newspapers, on television or on radio. We view the policy of section 7611 as
prohibiting random audits and audits based on speculation or the identity of an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IRS CCA 200623061, 2006 WL 1581073 (IRS CCA)

organization without any further information presenting a credible allegation of noncompliance with the requirements for tax exemption. We do not believe section 7611 is intended to force the IRS to be utterly passive in the face of information in the public domain.

We believe that review of publicly available documents including, but not limited to, newspapers, public data on campaign contributions, court documents, and web sites on the internet, does not violate section 7611 and can be used to develop a 'reasonable belief' under section 7611(a)(2). In our view, perusal of these types of sources to search for any mention of churches, or a specific church does not constitute a church tax inquiry, let alone a church tax examination. Therefore, we do not believe that review of publicly available material at our own initiative or as a measure taken in response to the result of a prior examination violates any provision of section 7611. We believe this is the case even though section 7611 was enacted prior to widespread use of the internet.

The internet has become one of the most utilized methods of making information available to the general public. As a practical matter, websites on the internet, including a church's website, are all publicly available information. Moreover, any organization, including any church that operates a website, has the ability to divide the website into sections with different types of access. For example, the church may have a part of the site that allows unrestricted access for the public and another part of the site that is restricted with secured access for members or employees. In our view, for purposes of section 7611, IRS viewing of the publicly available sections of any website would be no different than its perusal of any other publicly available document. Furthermore, we believe that viewing a church's website is entirely distinguishable from contacting the church for information. By creating the website the church has made the information on the website freely and publicly available to all just as if it had published a newspaper advertisement or church personnel had granted an interview to a newspaper. If however, the IRS contacts the church with questions or requests for documents or information, or the IRS contacts other persons with questions or requests for documents or information that are not publicly available, those contacts raise section 7611 issues. Similarly, viewing sections of a church's website that are not intended to be publicly available, for example, sections with restricted or secured access for members or employees, would also raise section 7611 issues.

For these reasons, we do not see any legal issues arising from having the examination function refer a church that was the subject of a prior examination to the Review of Operations Unit for follow-up in the coming election cycle as long as the follow-up is limited to reviewing publicly available material. In all cases, before commencing an inquiry, the IRS must comply with applicable section 7611 procedures, including the reasonable belief requirements of section 7611(a), and the requirements of section 7611(f) for higher level approval in certain cases, before beginning a subsequent inquiry.

**Issue (2)**: Is the Director, Exempt Organizations Examinations "an appropriate high-level Treasury official" described in section 7611(a)(2)? Should we anticipate difficulties in sustaining this position if we do not revise our regulation which cites the abolished position of 'Regional Commissioner' as the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IRS CCA 200623061, 2006 WL 1581073 (IRS CCA)


appropriate official?

  Section 7611(a)(2) requires that "an appropriate high-level Treasury official"
have a reasonable belief that a church may not be exempt from federal income tax
before the IRS may start a church tax inquiry. A church tax examination is legally
valid under section 7611(b)(1) if and only if the church tax inquiry was legally
valid. Thus, in order to establish that a church tax examination is legally valid,
the IRS must be able to document that an appropriate high-level Treasury official
had the necessary reasonable belief prior to the opening of the church tax inquiry
on the church in question.

  Section 7611(h)(7) provides that the term "appropriate high level Treasury
official" means any delegate of the Secretary whose rank is no lower than that of
a principal Internal Revenue officer for an internal revenue region. The
designation of the Regional Commissioner (or higher treasury official) as the
appropriate higher-level Treasury official for purposes of section 7611(a) is
provided in the legislative history to section 7611. H.R. Conf. Rep. No. 861, 98th
Cong., 2d Sess. 1101 (1984). That designation was captured in regulations that are
effective for all tax inquiries and examinations beginning after December 31,
1984. Treas. Reg. § 301.7611 Q&A 18.

  Section 1001 of The Internal Revenue Service Restructuring and Reform Act of
1998, Pub. L. 105-206, (RRA 1998), provides that the Commissioner of Internal
Revenue shall develop and implement a plan to reorganize the IRS. The plan shall
"eliminate or substantially modify the existing organization of the Internal
Revenue Service which is based on a national, regional, and district structure;
[and] establish organizational units serving particular groups of taxpayers with
similar needs...." Under the reorganized structure, tax exempt and government
entities are recognized as a particular group of taxpayers with similar needs.

  Congress was aware that positions within the IRS would be eliminated by the
reorganization it was directing the Commissioner to implement and accordingly,
section 1001(b) of RRA1998 provides a savings provision. Section 1001(b) provides
that "All orders, determinations, rules, regulations... and other administrative
actions ... which are in effect at the time this section takes effect ... shall
continue in effect according to their terms until modified, terminated,
superseded, set aside or revoked in accordance with law ..." This savings
provision applies to keep in effect regulations that make reference to officers
whose positions no longer exist. The legislative history of RRA 1998 at H.R. Conf.
Rep. No. 599, 105th Cong., 2d Sess. 195 (1998) explains that "[t]he legality of
IRS actions will not be affected pending further appropriate statutory changes
relating to such a reorganization (e.g., eliminating statutory references to
obsolete positions)." Although the legislative history to the savings provision
only refers to statutory changes, the provision refers to orders, determinations,
rules, regulations and other administrative. The Service, therefore, interprets
the savings provision liberally, applying it to regulations and other published
rules.

  After RRA 1998, the IRS issued Delegation Order 193 (Rev. 6) (11/08/2000) to
specify who would take the place of various officials in performing delegated

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IRS CCA 200623061                                                    Page 7

IRS CCA 200623061, 2006 WL 1581073 (IRS CCA)

functions. Delegation Order 193 provides in part that actions previously delegated to Regional Commissioners et al. by Treasury Regulations (par. 7) are now delegated to Directors, Compliance Services Field et al. Although there is no further delegation order specifically addressing functions under section 7611, [FN3] the IRM has been amended to designate the Director, Exempt Organizations Examinations (hereinafter, "Director"), as having final authority in all cases to determine whether to conduct a church tax inquiry and requiring the Director to sign the notice of examination. This position is recorded in IRM 4.76.7. Based on our understanding of the duties of the Director, the Service's decision to designate the Director to replace the Regional Commissioner as the IRS official responsible for determining whether to conduct a church inquiry is consistent with the policies underlying section 7611 and the accompanying regulations in effect in 1998.

  Challenges to the Director's designation as "an appropriate high-level Treasury official" are likely to try to distinguish the Director from the Regional Commissioner based on the former Regional Commissioner's complete authority within a region and the Regional Commissioner's proximity to the Commissioner in the chain of authority. As cited in the RRA 1998 legislative history above, the restructuring of IRS was intended to change focus from geographic location and concentrate on particular taxpayer groups. These objectives are achieved by assigning the duty of determining reasonable belief to an official who has national responsibility for tax exempt organizations, including churches, and oversees the examination function in which the need to determine reasonable belief arises. This designation of the Director enables the IRS to have nationwide consistency in the administration of section 7611 and is consistent with the statutory directives on the goals of the reorganization.

  As a direct report, the Regional Commissioner had closer management proximity to the Commissioner, but the more appropriate criteria for identifying a comparable official is the official's scope of authority. Before amendment by RRA 1998, the Employee Retirement Income Security Act, Pub. L 93-406, section 1051(a) enacted section 7802(b) which created the position of Assistant Commissioner (Employee Plans and Exempt Organizations). At the same time that the legislative history of section 7611 indicated that Regional Commissioners should sign the section 7611(a) reasonable belief letter to begin a church tax inquiry, the suggestion was made that the Assistant Commissioner (Employee Plans and Exempt Organizations) approve any subsequent examination under the five year rule of section 7611(f). H.R. Conf. Rep. No. 861, 98th Cong., 2nd Sess. 1110 (1984). As the Assistant Commissioner's approval was required for opening new examinations within 5 years of a previous examination, Congress believed the national perspective of the Assistant Commissioner carried more weight than the geographic perspective of the Regional Commissioner when it came to the administration of section 7611 cases. Thus, for purposes of section 7611, the Regional Commissioner was not considered a higher official than the Assistant Commissioner, notwithstanding his position in the management chain as a direct report to the Commissioner.

  The Director is at least an equivalent position to the Regional Commissioner for the purpose of approving a church inquiry or examination under IRC section 7611. The Regional Commissioner only had regional jurisdiction and in 1998, when the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IRS CCA 200623061                                                              Page 8

IRS CCA 200623061, 2006 WL 1581073 (IRS CCA)

position was abolished, it was necessary to assign the responsibility for
approving church tax inquiries to someone with comparable authority. The
Commissioner could have assigned this responsibility to area managers because they
have complete management authority within a geographic span comparable to the old
Regional Commissioners. However, by designating the Director, who has national
jurisdiction, as "an appropriate high-level Treasury official," the Service was,
in fact, being more conservative than necessary. As noted above, the intent of the
reorganization was to move IRS away from geographic divisions and focus upon
particular groups of taxpayers with similar needs. The position of the Director is
well suited for this purpose, having national jurisdiction over all the
organizations covered by section 7611 and able to provide consistent application
to the reasonable belief standard.

    Currently, there is no significant litigation risk with respect to the
delegation to Director. The arguments laid out above for considering the Director
to be at an equal or higher level than the Regional Commissioner following the
reorganization are sound.

    Nevertheless, whenever the section 7611 regulations are updated next, we
recommend the regulations be updated to reflect this change. This is a ministerial
change for clarity that would not make the current delegation to the Director
vulnerable.

    While the litigating risk may increase without an update to the regulations at
some future date because courts may give less weight to the savings provision in
section 1001(b) of RRA98 over time due to its temporal attributes, the regulations
under section 7611 are no more vulnerable to this possibility than other
regulatory provisions that refer to positions that have been eliminated. [FN4] The
Service has updated several orders, determinations, rules and regulations to
reflect position changes resulting from the reorganization, but many significant
orders, determinations, rules, regulations, and other administrative actions have
not been modified following the reorganization and continue to reference positions
eliminated as a result of the reorganization. The plan generally is to update the
positions in these orders, rules, and regulations whenever the orders, rules, or
regulations are next revised. Therefore, although an update is recommended, there
is no urgency requiring the Service to consider a regulation project before other
modifications to the regulations are needed.

FN1. In addition to the requirement of an appropriate high-level Treasury
official's 'reasonable belief,' sections 7611(b)(1)(A) and (B) provide that during
the course of an examination (or if expanding the scope of an examination pursuant
to section 7611(b)(4)) the IRS may only examine records or activities "to the
extent necessary" (the standard set in sections 7611(b)(1)(A) and (B)) to
determine liability or church status. This requirement arguably sets a higher
standard for enforcing a summons in a church case than in other summons
enforcement proceedings because the IRS must show that the information is
'necessary' to demonstrate a failure of compliance.

FN2. After the Restructuring and Reform Act of 1998, Delegation Order 193  (Rev.
6) (11/08/2000) provides that actions previously delegated to Assistant

        © 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IRS CCA 200623061, 2006 WL 1581073 (IRS CCA)


Commissioners et al. by Treasury Regulations (par. 7) are now delegated to
Division Commissioner et al. (par. 8).

FN3. The only delegation order specific to Church Tax Inquiries and Examinations
is Delegation Order 137 (Rev. 3) (12/31/1996). Delegation Order 137 concerns the
authority of certain officials to hold conferences described in IRC §
7611(b)(3)(A)(iii) and to execute agreements under IRC § 7611(c)(2)(C) to suspend
the periods for completing church tax inquiries or examinations. Delegation Order
137 does not address who may authorize a church tax inquiry.

FN4. The regulations include several references to district directors and other
officials whose positions no longer exist. Treasury Regulation § 301.6212- 1(a)
authorizes a district director or director of a service center (or regional
director of appeals) to send a notice of deficiency to a taxpayer if the official
determines that there is a deficiency in respect of income, estate or gift tax
imposed by subtitle A or B or an excise tax imposed by chapter 41, 42, 43, or 44.
Similarly, Treasury Regulation § 301.6201 1(a) authorizes and requires the
district director to make all inquiries necessary to the determination and
assessment of all taxes, and Treasury Regulation § 301.6404-1(a) authorizes the
district director or the director of the regional service center to abate any
assessment, or any unpaid portion thereof, if the assessment is in excess of the
correct tax liability. Although the position of district director was eliminated
with the reorganization, successor positions, i.e., area directors and territory
managers, continue to take actions pursuant to these regulations. We acknowledge
that the area director and territory managers positions have similar management
and tax administration authorities as those previously held by the district
director, and, therefore, the "redelegation" of these duties is not completely
analogous to the "redelegation" of the section 7611 authority, but, as with the
church tax inquiry, these critical functions continue to be performed and are
unaffected by the elimination of the position referenced in the regulation.

This document may not be used or cited as precedent. Section 6110(j)(3) of the
Internal Revenue Code.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D



**TAX EXEMPT AND
GOVERNMENT ENTITIES
DIVISION**

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

**DEC 1 4 2004**

New Light Church World Outreach and
Worship Centers, Inc.
11249 Crown Park Dr.
Houston, TX 77067-4008

**Person to Contact:**
Viris Pownell-Williams
**Employee Identification Number:**
65-04834
**Contact Telephone Number:**
(954)423-7472

**CERTIFIED MAIL**

Dear Sir or Madam:

The Internal Revenue Service is responsible for administering the Internal Revenue laws of the United States, including those that apply to organizations exempt from federal income tax. To carry out that responsibility, section 7602 of the Internal Revenue Code (IRC) authorizes the Service to determine the correctness of any tax return, to make a return when none has been filed, and to determine the tax liability of any person or organization. However, IRC section 7611 imposes restrictions on the Service in conducting tax inquiries and examinations of churches and conventions or associations of churches.

In passing IRC section 7611, Congress intended to ensure that the Internal Revenue Service carry out its obligation to resolve questions concerning the tax liability, if any, and the tax-exempt status of churches and organizations claiming to be churches, with due regard for both the rights of church organizations and the responsibility of the Service to enforce the Internal Revenue laws.

Because a reasonable belief exists that assets of New Light Church World Outreach and Worship Centers, Inc. are being used for the personal benefit of private individuals, thereby jeopardizing its tax-exempt status as an organization under section 501(a), this letter is notice of the beginning of a church tax inquiry described under IRC section 7611(a). We are sending this letter because we believe it is necessary to resolve questions concerning the operations of the church, such as: (i) whether the church is operated for the private benefit of its pastors and their family, (ii) whether the net earnings of the church may have inured to their private benefit, and (iii) whether the church may have engaged in excess benefit transactions with the pastors and their family.

Our concerns are caused by the following information:

1) Information received stating that church funds are being used to pay for the personal credit card charges (expenses) of the Hilliard family: (1) Dr. Ira Van Hilliard, (2) Dr. Bridget E. Hilliard, (3) Ms. Kermesha Evans, (4) Ms. Irishea Hilliard-Lewis, (5) Ms. Tina R. Hilliard-Egans (Chatman), and (6) Ms. Preashea Hilliard.

2) Information received stating that church funds are being used to pay for the personal living expenses of Dr. Ira and Bridget Hilliard, such as car payments, mortgage, and other daily living expenses.

3) Information received indicating church funds being used to maintain and operate a jet aircraft leased to the church by Dr. Ira Van Hilliard for his personal benefit.

4) Information received indicating Dr. Ira and Bridget Hilliard structured certain transactions with the church, that use church property and resources, for the sole purpose of claiming expenses to reduce their personal taxes; specifically, the aircraft lease agreement and a marketing agreement for a video series.

5) Assets owned by the church are being used to publish works created by Dr. Ira Van Hilliard.

Section 501(c) (3) of the Code provides, in part, for the exemption from Federal income tax:

Organizations organized and operated exclusively for charitable, religious or educational purposes, no part of the net earnings of which inure to the benefit of any private shareholder or individual.

Section 1.501(c)(3)-1(d)(1)(ii) of the Regulations states that an organization is not operated exclusively for one or more exempt purposes unless it serves a public rather than a private interest. It must not be operated for the benefit of designated individuals or the persons who created it.

The presence of a single substantial nonexempt purpose can destroy the exemption regardless of the number or importance of exempt purposes. When an organization operates for the benefit of private interests, such as designated individuals, the creator or his family, or persons directly or indirectly controlled by such private interests, the organization by definition does not operate exclusively for exempt purposes.

IRC section 4958(c) (1) (A) defines the term "excess Benefit transaction" to mean any transaction in which an economic benefit is provided by an applicable tax-exempt organization directly or indirectly to or for the use of any disqualified person if the value of the economic benefit provided exceeds the value of the consideration (including the performance of services) received for providing the benefit.

IRC section 4958(f) (1) defines the term "disqualified person" to mean, with respect to any transaction (A) any person who was, at any time during the 5-year period ending on the date of such transaction, in a position to exercise substantial influence over the affairs of the organization, (B) a member of the family of an individual described in subparagraph (A), and (C) a 35-percent controlled entity. Section 4958(f) (2) defines the term "organization manager" to mean, with respect to any applicable tax-exempt organization, any officer, director, or trustee of such organization (or any individual having powers or responsibilities similar to those of officers, directors, or trustees of the organization).

A list of specific questions [Attachment A] about your operations/activities is attached. Please answer each question completely. If your response resolves our concerns about your exempt status, it will not be necessary to pursue this matter further.

Attached as required by section 7611(a) (3) (B) (ii) is a statement of your administrative and constitutional rights during a tax inquiry and examination. Your rights include the right to a conference with Service representatives to discuss our concerns before the Service begins an examination. The Service will formally offer you the opportunity for a conference in the notice of examination, if a notice of examination is sent to you.

Please reply within 15 days of the date of this letter to:

> Internal Revenue Service
> TEGE Division, EO Examinations
> Attn: Viris Pownell-Williams, Group 7955
> 7850 SW 6th Court, Room 360
> Plantation, FL 33324

If we do not hear from you within that time, we may issue a Notice of Church Examination letter, which section 7611 requires us to issue before we initiate an examination of your records or religious activities.

If you have any questions, please contact the person whose name and telephone number are shown above.

Thank you for your cooperation.

Sincerely yours,

R. C. Johnson
Director, Exempt Organizations Examinations

Enclosures: (2)

3

## ATTACHMENT A

### QUESTIONS

*Section 501(c) (3) describes organizations organized and operated exclusively for religious, charitable, ... purposes. In order to qualify for exemption under section 501(c)(3), an organization must satisfy the following four criteria: (1) it must be organized and operated exclusively for exempt purposes; (2) no part of the net earnings of the organization may inure to the benefit of private individuals; (3) no part of its activities may constitute intervention or participation in a political campaign on behalf of a candidate for political office; and (4) no substantial part of its activities may constitute attempts to influence legislation or to carry on propaganda.*

We have received information indicating assets owned by New Light Church World Outreach and Worship Centers, Inc. (New Light) are being used to serve private interest rather than public interest. **Consequently, we request your response to the items noted below for the period ended December 31, 2001, 2002 and 2003.**

01. Information provided to us indicates that the Hilliard family used church funds to pay for personal charges made on their personal credit cards and church issued credit cards. Does the church review or audit its financial books and records to determine and ensure that church funds are not being used to pay for personal credit card purchases made by Dr. Ira Van Hilliard, Dr. Bridget E. Hilliard, Ms. Irishea Hilliard-Lewis, Ms. Tina R. Hilliard-Egans and Ms. Preashea Hilliard? If so, please describe the audit procedures employed by the church and the frequency in which the financial books and records are audited.

02. Please list all individuals authorized to make purchases on behalf of the church.

03. Please list all individuals who have credit cards issued to them by the church.

04. Please list all individuals who in the past three years have been issued church credit cards.

05. Please list all individuals who are authorized to make withdrawals or disbursements from the church account, either for payment of expenses or purchases.

06. Please list all individuals who in the past three years had the authority to make withdrawals or disbursements from the church account.

07. List and describe the documentation that is required to be submitted before credit card purchases are approved for payment.

08. Please list all individuals, who currently or in the past three years, had the authority to sign checks on behalf of the church.

09. Provide the name(s) and title(s) of the individual(s) who maintain the financial books and records of the church.

10. Provide the name(s) and title(s) of the individual(s) who is responsible for maintaining church funds.

11. If it was determined that church funds were used to pay for personal charges relating to one or more of the individuals identified in question 1, was it the organization's conclusion that these transactions were unauthorized or did the organization approve of these transactions.

12. If the church approved of the payments referenced in question 1, how did the church treat the payments i.e. fringe benefits, compensation for services, reimbursement of expenses, etc.

13. With respect to any answer provided in question 12, please provide an explanation or the basis of treating such payment as either fringe benefit, compensation for services, reimbursement of expenses, etc.

14. Did the church enter into a lease agreement with Dr. Ira Van Hilliard for the lease of an aircraft? If so, please explain the business purpose of the church entering into such agreement.

15. Please provide the terms of the lease agreement.

16. Please provide the following information with respect to the church's approval of the aircraft lease agreement:

   a) Was the lease agreement reviewed, discussed, and approved by the board of directors. Please answer Yes or No. If Yes, does the church have records (board minutes) of the board of director's review, discussion, and approval of the lease agreement. Please answer Yes or No.

   b) Provide the date of approval, list of board members who approved the transaction and identify those board members who are related to the Hilliard family

2

    c) List all individuals affiliated with the organization that participated in the negotiation of the terms of the agreement and indicate if that person was an employee and/or board member.

17. Indicate the names and titles of the individuals who are permitted to use the aircraft and provide the names and titles of the individuals who used the aircraft in 2001, 2002 and 2003.

18. For those individuals identified in question 17 that used the aircraft, please state the purpose of their use.

19. With respect to the use of the aircraft for travel, does the church maintain flight records detailing the date of travel, point of departure and arrival, purpose of travel?

20. What is the church's policy regarding the use of the aircraft for personal travel? Is this policy in writing and how is the policy communicated to the employees?

21. Does the lease payment for the aircraft represent fair market value? If yes, how was the value determined. Please list and described each document and source of information used to support the annual lease payment amount. Also, list each document that the organization currently has to support the fair market value of the payment amount.

22. If the payment does not represent fair market value, what does it represent?

23. Did the church enter into an agreement with Dr. Ira Van Hilliard for the marketing and sale of a video series? If so, please explain the business purpose of the church entering into such an agreement.

24. Please provide the terms of the marketing agreement.

25. Please provide the following information with respect to the church's approval of the marketing agreement:

    a) Was the marketing agreement reviewed, discussed, and approved by the board of directors. Please answer Yes or No. If Yes, does the church have records (board minutes) of the board of director's review, discussion, and approval of the marketing agreement. Please answer Yes or No.

    b) Provide the date of approval, list of board members who approved the transaction and identify those board members who are related to the Hilliard family

3

    c) List all individuals affiliated with the organization that participated in the negotiation of the terms of the agreement and indicate if that person was an employee and/or board member.

26. Please provide a list of all church assets and resources used in the marketing and sale of the video series.

27. Does the church publish materials created by Dr. Ira Van Hilliard? If yes, please provide a list of items that have been published i.e., books, tapes, videos, sermons, recorded messages, pamphlets, etc.

28. Does the church maintain ownership rights (copyrights) to the published materials of Dr. Ira Van Hilliard?

29. Are the materials published by the church, materials created by Dr. Ira Van Hilliard in his capacity as pastor/employee of New Light? If yes, please provide the following information.

    a) Were these items produced using resources owned by New Light? List and describe each resource used and indicate whether or not New Light was compensated for the use of these resources and the amount of compensation received.

    b) Were any of these items created by Dr. Hilliard while he was in paid employee status performing functions as a part of his ministerial duties? If yes, explain the circumstances under which they were created.

    c) Indicate if Dr. Hilliard's salary includes compensation for works created by him.

    d) For each year, provide the total amount of revenue generated by New Light for pastor/employee published works.

    e) For each year, list each category of expense and amount with respect to activities associated with the production, publishing, marketing, and sales of pastor/employee created items.

    f) For each year, provide the total amount paid to Dr. Hilliard for pastor/employee published works.

30. Please indicate if the church published any materials for Dr. Hilliard other than those published in his capacity of pastor/employee, and answer the following?

4

    a) List and describe each type of published work and indicate the capacity in which Dr. Hilliard created these materials.

    b) Describe the compensation and/or reimbursement arrangement.

    c) For each year, provide the total amount of revenue generated by New Light for non-pastor/non-employee published works.

    d) For each year, list each category of expense and amount with respect to activities associated with the production, publishing, marketing, and sales of non-pastor/non-employee items.

    e) For each year, provide the total amount paid to Dr. Hilliard for non-pastor/non-employee published works.

31. With respect to the sale of any work created by Dr. Hilliard, please provide the following information.

    a) Are any of the materials marketed directly or indirectly using the name of your organization?

    b) Who is responsible for setting the selling price of the published materials? If New Light is responsible for setting the price, indicate as a percentage or dollar amount, how much above cost are the materials sold for?

    c) Describe the methods used to market the materials. Indicate if materials are sold through bookstores, subscriptions, speaking engagements, crusades, etc.

32. List and describe the benefits that the church received from engaging in the aircraft lease agreement, marketing agreement, and publishing activities with Dr. Ira Van Hilliard.

33. Provide a breakdown of Dr. Ira Van Hilliard's annual compensation package (category and amount) to include but not limited to wages, housing allowance, car payment, fringe benefits, spending accounts, living expenses, etc.

## Statement of Administrative and Constitutional Rights

The First Amendment of the Constitution provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." The first clause is referred to as the Establishment Clause; the second is the Free Exercise Clause. The Establishment Clause prohibits government sponsorship of religion. Central to this prohibition are the concepts of government neutrality and the separation between church and state. The Supreme Court has held that the Free Exercise Clause of the First Amendment is an absolute prohibition against the regulation of religious beliefs. The First Amendment provides substantial protection for lawful conduct grounded on religious beliefs. However, the government may limit religiously motivated conduct when the limitation is essential to accomplish an overriding governmental interest.

Section 7611 of the Internal Revenue Code provides the following protections to organizations claiming to be churches or conventions or associations of churches:

1) The IRS may begin a church tax inquiry only if the Director, Exempt Organizations (EO) Examinations reasonably believes, on the basis of facts and circumstances recorded in writing, that an organization claiming to be a church or convention or association of churches may not qualify for exemption, may be carrying on an unrelated trade or business (within the meaning of section 513 of the Code), may otherwise be engaged in taxable activities or may have entered into an IRC section 4958 excess benefit transaction with a disqualified person.

2) If the Service begins a tax inquiry, the IRS is required to provide written notice at the beginning of the inquiry. The Notice of Church Tax Inquiry must contain an explanation of the concerns that gave rise to the inquiry and the general subject matter of the inquiry. It must also contain an explanation of the provisions of the Code that authorize the inquiry and a general explanation of applicable administrative and constitutional provisions with respect to the inquiry.

3) If the IRS wishes to examine a church's records or religious activities, the Director, EO Examinations must personally approve the examination and must provide an additional written notice (Notice of Church Examination) to the church at least 15 calendar days prior to the examination. At the same time the Service gives notice to the church, the Director, EO Examinations must notify the Division Counsel of the proposed examination. The Division

Counsel is then allowed 15 days to file a non-binding advisory opinion about the examination. The church's Notice of Church Examination is required to include the following: a copy of the Notice of Church Tax Inquiry previously provided; a description of the church records and activities which the IRS wishes to examine; a copy of all documents collected or prepared by the IRS for use in the examination that are required to be disclosed under the Freedom of Information Act (5 U.S.C. 552) as supplemented by section 6103 of the Code; and an offer of a conference with the IRS to discuss the concerns which gave rise to the inquiry and the general subject matter of the inquiry prior to the examination.

The Service may send the Notice of Church Examination to the church no less than 15 days after the Notice of Church Tax Inquiry. However, the IRS must generally mail the Notice of Church Examination, within 90 days after the Notice of Church Tax Inquiry or the IRS is required to end the inquiry without change to the church's tax status.

4)   Failure of the IRS to substantially comply with the above requirements may result in a stay of summons enforcement proceedings to gain access to church records until the requirements are satisfied.

5)   The IRS is generally required to complete any church inquiry or examination no later than two years after the date on which the Notice of Church Examination was mailed to the church. The two-year period may be extended by mutual agreement between the church and the IRS. It is also suspended during certain judicial proceedings and during any period in excess of 20 days but not in excess of six months, during which a church or its agents fail to comply with any reasonable IRS request for church records or other information. However, in the case of a church tax inquiry in which there is no Notice of Church Examination, the IRS is generally required to complete the inquiry within 90 days after the date on which the Notice of Church Tax Inquiry was mailed to the church.

6)   The IRS is limited initially to an examination of church records relevant to the church's tax-exempt status for the three most recently completed tax years preceding the date of the Notice of Church Examination. If the church is not exempt for any of these three years, the IRS may examine relevant records for the six completed tax years immediately preceding the Notice of Church Examination. The IRS may examine Church records of a year earlier than the third or sixth completed taxable years if material to a determination of tax-exempt status during the three or six-year period. For examinations relating to unrelated business taxable income, when no return is filed, the

IRS may assess tax for the six most recently completed taxable years preceding the date of the Notice of Church Examination. The IRS may examine Church records of a year earlier than the sixth year if material to a determination of unrelated business income tax liability during the six-year period. For examinations involving issues other than determination of exempt status or unrelated business income tax liability, there is no limit on the taxable periods that may be examined if no return has been filed. If a church has filed a tax return, the normal rules for determining tax liability or assessing tax apply.

7)    IRS Counsel must approve, in writing, an adverse determination concerning the tax-exempt status of an organization claiming to be a church, an adverse determination concerning the right of an organization claiming to be a church to receive tax deductible contributions, or the issuance of a notice of tax deficiency to a church or disqualified person subject to IRC section 4958 tax following a church tax examination.

8)    Organizations claiming to be churches are entitled to bring a declaratory judgment action under section 7428 once the IRS issues a revenue agent's final report proposing to revoke or deny the church's tax exempt status.

9)    An inquiry or examination begun within five years of the date of the Notice of Church Examination (or if no Notice of Church Examination is sent, a Notice of Church Tax Inquiry), must be approved by the Director, EO Examinations and the IRS Assistant Commissioner for Tax Exempt and Governmental Entities. This approval is not required if the second examination does not involve the same or similar issues as the preceding inquiry or examination or if the first inquiry or examination resulted in a change to the organization's exempt status, an assessment of unrelated business income tax or other tax, or a recommendation for a substantive change in the church's operations, including accounting practices.

# EXHIBIT E



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

TAX EXEMPT AND
GOVERNMENT ENTITIES
DIVISION

MAY 16 2005

New Light Church World Outreach and
Worship Centers, Inc.
11249 Crown Park Dr.
Houston, TX 77067-4008

Person to Contact:
Viris Pownell-Williams
Employee Identification Number:
65-04834
Contact Telephone Number:
(954)423-7472

**CERTIFIED MAIL**

Dear Sir or Madam:

On December 14, 2004 we sent you a Notice of Church Tax Inquiry within the meaning of section 7611(a) of the Internal Revenue Code to notify you of concerns we have about your excise tax liability and your tax exempt status. We are attaching a copy of that letter and a copy of the information that caused our concern as required by section 7611(b) (3) of the Code.

Thank you for your letters of February 3, 2005 and March 30, 2005 in response to the Notice of Church Tax Inquiry. We still think, however, that an examination of your activities and books and records may be necessary to resolve our concerns about whether church assets are being misused, especially whether church assets are being used to maintain and operate a jet aircraft which is leased to the church and is being used for the personal benefit of the Hilliard family without being properly included in compensation. Accordingly, as provided by law, we are sending this Notice of Church Examination. Enclosed is a description of the records and activities to be examined. See Attachment entitled "Records and Activities to be Examined." Before we begin an examination or take action based on information in our possession, you have the right to a conference with Internal Revenue Service officials to try to resolve our concerns and alleviate the need for further action. A conference may help define the issues and limit the scope of any examination. You must request a conference before the beginning of an examination, which will begin no sooner than 15 calendar days from the date of this letter.

We have enclosed a copy of all documents collected or prepared by the Service for use in the examination, disclosure of which is required by the Freedom of Information Act (5 U.S.C. 552), as supplemented by IRC Section 6103 (relating to disclosure and confidentiality of tax return information).

If you would like a conference, please contact the person whose name and telephone number are listed above to arrange a mutually convenient time. If we do not hear from you within 15 days from the date of this letter, we will contact you to arrange a time for the examination or we will notify you of the action the Service will take based on information in our possession.

Thank you for your cooperation.

Sincerely yours,

for R. C. Johnson
Director, Exempt Organizations
Examinations

Cc: David Epstein

Enclosures: (2)

3

## Records and Activities to be Examined

Please have the following records available for the years 2002, 2003, and 2004:

MJ

1. Copies of articles of incorporation and all amendments.
2. Copies of bylaws and all amendments.
3. Copies of all board minutes including exhibits and attachments, wherein the lease of the jet aircraft, the use of the jet aircraft, and any expenditure relating to the jet aircraft is discussed.
4. Copy of the jet aircraft lease agreement and all amendments to the agreement.
5. Copies of your policy and procedures relating to the use of the jet aircraft (personal and business).

TE

6. Copies of all flight records for the aircraft detailing the date of travel, name of traveler, point of departure and arrival, and purpose of travel.

MJ

7. Copy of your reimbursement policy regarding reimbursement for personal use of church assets.

MJ/TE

8. For each member of the Hilliard family, provide records showing total amount of the aircraft usage that was treated a taxable fringe benefit.

EF/BK

9. Copies of Forms W-2 and Forms 1099 which include amounts associated with personal use of the aircraft by the Hilliard family.

HR

10. Copies of payroll records showing amounts coded and entered for the personal use of the jet aircraft and documentation showing how the amount was computed.

HR/MJ

11. List of all persons (names and titles) responsible for maintaining and operating aircraft and their position descriptions.

HR

12. Payroll records for all individuals associated with operating and maintaining the aircraft. *Pilots/ line, logistics*

MJ

13. Copies of all records associated with the reimbursement for the use of the aircraft for personal use as discussed in your response to question 16 in your letter dated March 30, 2005.

MJ

14. Copies of all compensation agreements, employment contracts, etc. associated with the Hilliard family's usage of the aircraft.

MJ

15. Written documentation detailing all benefits which were approved for each member of the Hilliard family's usage of the aircraft.

MJ

16. Minutes of the compensation committee and all exhibits and attachments pertaining to benefits for Hilliard family members for usage of the aircraft.

ACCTG

17. List of general ledger accounts number, title associated with the aircraft lease arrangement including lease payments, maintenance, etc.

ACCTG

18. Copies of all cancelled checks, for payments associated with the aircraft lease agreement and expenses for the aircraft. *CLARIFY*

ACCTG

19. Complete Accounts Payable file pertaining to lease payments and expenses associated with the aircraft. *CLARIFY : copy of invoices?*

ACCTG

20. Bank statements and supporting documents to show any deposits associated with reimbursement for the use of the aircraft.

# EXHIBIT F

Law Offices
J. DAVID EPSTEIN
Attorney-at-Law
PO Box 449
Newtown Square PA 19073
610/355-7577

Admitted to Practice In:
Indiana
California
Pennsylvania

Direct FAX·
Area Code 610
355-1991

Admitted to· United States Tax Court; United States Court of Appeals for the 9th Circuit; U.S. District Court, Southern
District of Indiana; U S District Court, Southern District of California; U.S. District Court, Eastern District of Pennsylvania

January 11, 2005

Viris Pownell-Williams
Internal Revenue Service
TE/GE Division
EO Examinations, Group 7955
Room 360
7850 SW 6th Court
Plantation FL 33324

Re:   New Light Church World Outreach and Worship Centers, Inc.

Ms. Pownell-Williams:

Our office represents the above organization.  We are responding to your letter of
December 14, 2004.

Your letter states that "a reasonable belief exists" regarding my client and certain
issues that you enumerate.  However, your letter does not state who has this
"reasonable belief" or what gave rise to it.

In the appendix to your letter, you reference IRC 7611, which states that a church
tax inquiry requires that "an appropriate high-level Treasury official reasonably
believes" on the basis of "facts and circumstances recorded in writing" that a
church may not be exempt under section 501(a).  Based on these requirements:

1.  Who is the appropriate high-level Treasury official who has this reasonable
    belief?  Is this yourself?  If not, please identify the appropriate official(s).

1

2. What facts and circumstances are recorded in writing which gave rise to this belief? If these exist, please consider this letter a request under FOIA for copies of the same.

On page 2 of your letter, you state "our concerns are caused by the following information", and then you list four various items which appear to be third party allegations, and a fifth item which is a purported statement of fact.

1. Was the information you received in writing? If so, please consider this letter a request under FOIA for copies of the same.

2. Was this information received from an informant or informants? If so, please consider this letter a request under FOIA for copy of Form 5346 for each informant.

3. What is your basis for making the statement of purported fact in the fifth item?

Our basis for the above questions is your listing of various individuals employed by the Church, and various transactions that you could not have knowledge of unless an informant gave the information to you, or you were privy to an audit by SB/SE which covered the information.

Our further response to your concerns is as follows:

1. The Church has adopted a written accountable reimbursement plan, the plan has been in place for many years, and the plan is administered correctly and consistently.

   The Church employs outside independent auditors which monitor standard accounting procedures at the Church, such as the accountable reimbursement plan, purchase orders, banking, internal accounting controls, payables, review of all material transactions, and so forth. The Church also employs outside attorneys and in-house tax counsel who monitor tax matters, contractual issues, and perform internal review and control of all related issues.

2. Longstanding Church policy requires payments to individuals by the Church to be made as payment for services rendered, to be reasonable in amount, and taxable amounts to be reported to the Service on Form W-2, Form 1099, and Form 941. The Church's independent auditors verify these transactions on an annual basis.

2

3. The Service has already audited the transaction you reference, and has concluded that the information you state is not true. The statement in your letter would lead us to conclude that you already have access to this information and therefore it cannot constitute the basis for a reasonable belief, since the Service has already reached a contrary conclusion.

4. Again, the Service has already audited the transactions you reference, and has reached a conclusion contrary to the statement in your letter. The Service already has access to all the information on these transactions.

5. Once more, the Service has already audited the transaction you reference, and concluded otherwise.

Please be advised that my client denies each and every one of the allegations as stated in your letter, and furnishes the above information in response. Outside independent auditors as well as in-house counsel have concluded that my client is compliant with the requirements of IRC 501(a).

We believe these responses should conclude this matter and should satisfy your concerns.

If you wish to pursue this matter further, please consider this letter a request under FOIA for copies of the organization's complete administrative file. In addition to this and the FOIA requests stated above, you may consider this letter a request for a copy of all documents which were collected or prepared by the Service for use in the proposed examination of this organization. This office will be happy to pay for the costs to obtain this data once we know what those costs will be. Please include tax research, your Revenue Agent notes, as well as memoranda, work papers, and correspondence, and any other papers in said administrative file. If you do not wish to pursue this matter further, you may disregard these requests.

In the appendix to your letter, the material included references the organization's right to a conference with the Secretary before any examination of church records, and an offer to have a conference between the church and the Secretary in order to discuss, and attempt to resolve, concerns relating to such examination, as well as a copy of all documents which were collected or prepared by the Internal Revenue Service for use in such examination and the disclosure of which is required by the Freedom of Information Act (5 U.S.C. 552).

You may consider this letter a formal request by the church for a conference with the Secretary, either at the National Office or with the highest TE/GE official at the Dallas office, unless this matter is resolved by this letter.

3

My client requests that you determine that an examination is not necessary and conclude this inquiry by closing the file on this matter.

Sincerely,


David Epstein

DE/s


Enclosure:  Form 2848

# EXHIBIT G



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
7850 SW 6th Court, Room 306
Plantation, FL 33324

TAX EXEMPT AND
GOVERNMENT ENTITIES
DIVISION

**Date:**
  January 25, 2005
**Person To Contact:**
  Viris Pownell-Williams/ID# 65-04834
**Telephone Number:**
  (954) 423-7472
**Refer Reply to:**
  TEGE:EO:7955:VPW

New Light Church World Outreach and
Worship Centers, Inc.
11249 Crown Park Dr.
Houston, TX 77067-4008

Dear Mr. Epstein:

This is in response to your letter dated January 11, 2005. Under Section 7611(a), the Service must have a reasonable belief that matters should be the subject of inquiry prior to issuing a notice of church tax inquiry. The reasonable belief requirement is met if an appropriate high-level Treasury official (Director, Exempt Organization Examinations)1 reasonably believes on the basis of facts and circumstances recorded in writing that the church may not be exempt, by reason of its status as a church from tax under section 501(a), maybe carrying on an unrelated trade or business, or may otherwise be engaged in activities subject to tax by the Internal Revenue Code. I.R.M. 4.76.7.4.1(1) (For a full discussion on Church Information Referrals please see I.R.M. 4.76.7.4.2).

The facts and circumstances forming the basis of the Service's reasonable belief must be derived from information that has been lawfully obtained and recorded in writing. I.R.M. 4.76.7.4.1(1), (2) & (3). In the instant case, the Service's reasonable belief was based on information provided by an informant, whose identity cannot be disclosed, 2 and other information protected by I.R.C. § 6103, all of which were determined to be reliable and recorded in writing.

In your letter dated January 11, 2005, you request under FOIA copies of all documents that formed the basis of the Service's reasonable belief. You also request a copy of Form 5346 "for each informant." We believe that your requests may be premature since under section 7611(b)(3)(A) the Service is required to provide, with a Notice of Church Tax Examination, copies of all documents collected or prepared by the Service for use in such examination and which would be disclosable under FOIA. We are not at the Notice of Church Tax Examination stage yet

---

1  This would include an authorized individual acting for the Director, Exempt Organizations who in this case was LaPaula Davis, EO Mandatory Review Program Manager.

2  I.R.M. 25.2.1.2(5) Disclosure/Security Procedures provides that IRS personnel are required to treat the identity of the informant and the informant's information as highly confidential.

in this case. We are only at the inquiry stage. Nevertheless, we have forwarded your FOIA request to our disclosure office for processing.

Attached to our church tax inquiry letter dated December 14, 2004, were 33 questions. We requested that New Light Church World Outreach and Worship Centers, Inc. respond to those 33 questions. We indicated that if the church's responses resolve our concerns it would not be necessary to pursue the matter further, i.e., to proceed to a Church Tax Examination. You have not adequately and completely responded to those questions. It appears that you have only responded to the first question. Please respond to all 33 questions and provide us with as much information as possible in order for us to make an informed determination. If your responses adequately resolve our concerns an examination will not be necessary and this matter will be ended.

In your letter, you also allege that the fifth item in our inquiry letter is "a statement of fact." We are not asserting this to be a statement of fact. It was incorrectly worded. It should have read – "Information received indicating assets owned … ." We apologize for any confusion.

Please reply by January 31, 2005 to:

     Internal Revenue Service
     TEGE Division, EO Examinations
     Attn: Viris Pownell-Williams, Group 7955
     7850 SW 6th Court, Room 360
     Plantation, FL 33324

Should you have any further questions, please contact the person whose name and telephone number are shown above.

Thank you for your cooperation.

     Sincerely yours,

     *Viris Pownell-Williams*

     Viris Pownell-Williams
     Internal Revenue Agent

Cc: Malachi S. Johnson
    William Grimsinger

# EXHIBIT H

# FAX COVER SHEET

## INTERNAL REVENUE SERVICE

**OFFICE OF ASSOCIATE CHIEF COUNSEL**
**TAX EXEMPT & GOVERNMENT ENTITIES)**
**4050 Alpha Road, 13th Floor**
**Mail Code 2000NWSAT**
**Dallas, Texas 75244-4203**
**(972) 308-7900**
**FAX: (972) 308-7981**



| Date Sent: | January 27, 2005 | Pages Sent: | 2 (Counting Cover) |
|---|---|---|---|
| Deliver To: | Malachi Johnson<br>General Counsel | FAX Number: | (281) 765-1900 |
| Organization: | New Light Church World Outreach and Worship Center, Inc. | Phone Number: | |
| Sender: | Michael K. Park<br>General Attorney, (Great Lakes & Gulf Coast Area, Dallas Group) | FAX Number: | (972) 308-7981 |
| Office: | Tax Exempt & Government Entities | Phone Number: | (972) 308-7912 |
| Sen by: | _____ | Time: | _____ |

### THIS DOCUMENT IS INTENDED ONLY FOR THE NAMED ADDRESSEE.

This communication is intended for the sole use of the individual to whom it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient or the employee or agent for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication may be strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone, and return the communication to the address above via the United States Postal Service. Thank you.

**COMMENTS:**   Copy of Designation Order.

# INTERNAL REVENUE SERVICE
## DESIGNATION

LAPAULA DAVIS
(NAME)

IS DESIGNATED TO ACT AS:

## DIRECTOR, EO EXAMINATIONS

(TITLE OF POSITION)

| FROM: | TO: |
|---|---|
| OCTOBER 25, 2004 | DECEMBER 31, 2004 |

REMARKS:

LIMITED TO SIGNATURE AUTHORITY ON MATTERS RELATING TO CHURCH TAX INQUIRIES AND/OR CHURCH TAX EXAMINATION AS DEFINED IN IRC 7611.

| SIGNATURE: | DATE: |
|---|---|
| R. C. Johnson | 10/26/04 |

TITLE:
Director, EO Examinations

COPY TO:
  EO Area Managers
  Director, EO

DEPARTMENT OF THE TREASURY - INTERNAL REVENUE SERVICE

LaPaula is Mgr of Exam, Programs, & Review

# EXHIBIT I

**Caplin & Drysdale**
A T T O R N E Y S

Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
202-862-5000  202-429-3301 Fax
www.caplindrysdale.com

202-862-5020 Direct
MSO@capdale.com

February 28, 2006

<u>Via Facsimile (954-423-7780) and Federal Express</u>

Viris Pownell-Williams, Group 7955
Internal Revenue Service
TEGE Division, EO Examinations
7850 SW 6th Court, Room 360
Plantation, FL 33324

Re:  <u>New Light Church World Outreach and Worship Centers, Inc.</u>

Dear Ms. Pownell-Williams:

I am writing to express my concerns regarding several procedural issues relating to the examination of New Light Church. Specifically, it appears that the IRS has not complied with the requirements of section 7611 of the Internal Revenue Code.

The Church feels very strongly that all official procedures be followed in the conduct of its examination by the IRS. Of particular concern is the fact that it appears that the initial "reasonable belief" determination in its case was not made by the appropriate high level official. The regulations duly promulgated under section 7611 are clear that the decision is to be made by a Regional Commissioner or higher official. The authorization of the inquiry of the Church appears to have been signed by an official named "Lapaula Davis" for Ms. Rosie Johnson, the Director of EO Examinations. We can find no indication that the Treasury Regulations under section 7611 have been modified to authorize the Director of EO Examinations to make the "reasonable belief" determination, nor can we find any indication that the Director of EO Examinations is authorized to delegate that authority to a subordinate employee. Nevertheless, it appears that Ms. Rosie Johnson signed a "designation" on October 26, 2004 through which she impermissibly designated Lapaula Johnson to act at the Director of EO Examinations for church tax inquiries and examinations under section 7611. I have attached a copy of this "designation" for your reference. Because section 7611 is designed to protect churches from unnecessary and overreaching audits, these procedural defects are simply unacceptable and must be rectified.

Caplin&Drysdale
C H A R T E R E D

- 2 -

We propose a conference call to discuss the status of the examination, the correction of the deficiencies, and a possible resolution of the issues. Should you choose to proceed with the examination, we trust that the IRS will be willing to voluntarily correct the defects discussed above. In particular, section 301.7611-1, A-17 of the Treasury Regulations prohibits the IRS from proceeding until violations arising under section 7611 are corrected; accordingly, we respectfully request that the Service reissue the authorization of inquiry under section 7611. We assume that any such authorization would, of course, comply with the heightened requirements of section 301.7611-1, A-16 of the Treasury Regulations regarding multiple examinations of a single church within a five year period.

Furthermore, I have received a copy of your latest requests for information from New Light Church (Information Document Requests # 28, # 29 and # 30) relating to aircraft. I note that IDR # 29 requests the total acquisition cost of the aircraft, which was already provided to you in response to IDR # 8 on July 28, 2005. Additionally, my client is growing concerned about the length of time that the examination is taking. In the future, please direct all communications to me so that I may ensure the examination proceeds in a timely fashion.

At your convenience, please contact me at 202-862-5020 to discuss these arrangements.

Sincerely,

Marcus S. Owens

cc: Commissioner, Tax-Exempt and Government Entities
    Director, Exempt Organizations Division
    Director, EO Examinations

# EXHIBIT J



Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
202-862-5000  202-429-3301 Fax
www.caplindrysdale.com

202-862-5020 Direct
mso@capdale.com

March 22, 2006

**Via Facsimile & Overnight Mail**

Internal Revenue Service
Attn: Viris Pownell-Williams
7850 SW Sixth Court, Group 7955
Plantation, FL 33324

Re: New Light Church World Outreach and Worship Centers, Inc.

Dear Ms. Pownell-Williams:

On behalf of New Light Church (the "Church"), I am writing to bring to your attention a recent memorandum from Internal Revenue Service ("IRS") Chief Counsel that underscores the procedural flaws in this case.

On February 28, 2006, I wrote to express our concern regarding the IRS's compliance with the procedural safeguards imposed under section 7611 of the Internal Revenue Code to protect churches from unnecessary audits. Similar concerns were raised with you as early as January 2005. Specifically, we challenged the delegation of the "reasonable belief" determination at the church tax inquiry stage to relatively low-ranking IRS employees in violation of the clear legislative directive and intent of Section 7611(a)(2). In this regard, we read with great interest a legal memorandum released this week in which IRS Chief Counsel appropriately concluded that the Treasury Secretary may not delegate the authority to make "good faith" exceptions under section 903(d) of the American Jobs Creation Act of 2004 ( the "Memorandum"). In the Memorandum (enclosed for your reference), the IRS takes a rightfully narrow approach to the issue, construing both Section 7701(a) and two conflicting off-Code provisions to exclude delegation of the Secretary's authority to sign waivers in that case.

Caplin&Drysdale
C H A R T E R E D

Ms. Pownell-Williams
March 22, 2006
Page 2

Applying these principles to our case, we must assume that Chief Counsel would take a similarly literal approach in the case of church tax inquiries, where the intent of the statute is to protect churches from unwarranted government intrusion in their affairs. At issue here is the definition of an "appropriate high-level Treasury official" set forth in Section 7611(h)(7): "the Secretary of the Treasury or any delegate of the Secretary whose rank is no lower than that of a principal Internal Revenue officer for an internal revenue region." The Memorandum appears to conflict with both of the delegations of the Secretary's "reasonable belief" determination in Section 7611 cases: (i) first, to the Director of EO Examinations who clearly is not a "principal" officer of the IRS, with duties and responsibilities comparable to those of a Regional Commissioner; and (ii) more recently, as part of the designation of Lapaula Johnson to act as the Director of EO Examinations for church tax inquiries and examinations under section 7611.

We remain troubled that, despite the clear language of the Code and regulations referencing the need for very high-level decision making in Section 7611 cases, the threshold "reasonable belief" determination apparently has been delegated to technical employees in the EO Division without any statutory amendment, or even the appropriate notice-and-comment process that is required for regulatory modifications. Should the IRS wish to proceed with an examination of the Church, we reiterate our request that the IRS revisit the threshold "reasonable belief" determination at an appropriate high-level within the agency, as required by law and regulation, and reconsider whether a church tax inquiry was ever, in fact, warranted in this case.

Please feel free to call me (202/862-5020) with any questions.

Sincerely,

Marcus. S. Owens

Enclosures

cc:    Malachi Johnson, Esq.
       David Epstein, Esq.

# Treasury Secretary May Not Delegate Authority to Make Good Faith Exceptions

In a legal memorandum, the Service has determined that the Treasury Secretary cannot delegate authority to waive the special interest and penalty rules applicable to reportable or listed transactions.

**Citations:** ILM 200611001

**Date:** Jan. 20, 2006

Full Text Published by **taxanalysts**™

UILC: 6404.00-00
Release Date: 3/17/2006

Date: January 20, 2006

Internal Revenue Service
Memorandum

CC:PA:APJP:B03:JAJebe
NOT-124546-05

To:
Jonathan R. Zelnik
Special Counsel to the Senior Counsel
(Office of the Chief Counsel)

Joseph F. Maselli
Area Counsel (Heavy Manufacturing & Transportation)
(Large & Mid-Size Business)

Kathy K. Petronchak
Director, Pre-Filing -- Technical Guidance
(Large & Mid-Size Business)

Walter L. Harris
Project Director (Field Specialists (Exec))
(Large & Mid-Size Business)

Louis R. Wells
Supervisory Internal Revenue Agent
(Natural Resources & Construction)
(Large & Mid-Size Business)

From:
Curt G. Wilson
Assistant Chief Counsel, Administrative

Provisions & Judicial Practice
(Procedure & Administration)

Subject:
Section 303(a)(2)(B)(iii) of GOZA and section 6404(g) of the Code

This Chief Counsel Advice responds to your e-mail dated January 11, 2006, with respect to section 303(a)(1) of the Gulf Opportunity Zone Act of 2006, Pub. L. 109-135, which modifies paragraph 2 of section 903(d) of the American Jobs Creation Act of 2004. This advice may not be used or cited as precedent.

## ISSUES

1. Whether the reference to the Secretary of the Treasury in this provision means that the Secretary must personally exercise the authority described in the statute.

2. What is the scope of interest relief for listed and certain reportable transactions under the amendments in section 303(a)(1) of GOZA?

## CONCLUSIONS

1. Given the plain language of the amendment to the off-Code provision, the Secretary of the Treasury must personally exercise the authority described.

2. To qualify for relief under the amendment to 903(d)(2)(B)(ii)(II), taxpayers must have legally binding settlement agreements by January 23, 2006.

## LAW AND ANALYSIS

Section 303(a) amends section 903(d)(2)(B)(iii) to read: "TAXPAYERS ACTING IN GOOD FAITH. -- The Secretary of the Treasury may except from the application of clause (i) any transaction in which the taxpayer has acted reasonably and in good faith." You have asked for our opinion whether the reference to the Secretary of the Treasury in this provision means that the Secretary must personally exercise the authority described in the statute. As you know, section 7701(a)(11)(A) provides that "the term `Secretary of the Treasury' means the Secretary of the Treasury, personally, and shall not include any delegate of his." Section 7701(a) applies only to Title 26, however. Because section 903(d) is an off-Code provision, section 7701(a) does not apply. We must, therefore, look instead to the language of the provision and apply the normal rules of statutory construction. We note that section 903(d)(2)(B)(iii) reads "[t]he Secretary of the Treasury may . . ." and the neighboring section 903(d)(2)(B)(ii) uses the term "[t]he Secretary of the Treasury or the Secretary's delegate . . ." (Emphasis added). The fact that Congress expressly provided for delegation by the Secretary of the Treasury in section 903(d)(2)(B)(ii) and did not do so in section 903(d)(2)(B)(iii), is an indication that Congress consciously chose not to allow delegation in latter provision. Applying the rules of statutory construction, we conclude that the better interpretation of the term "Secretary of the Treasury" excludes a delegate. We have found no other statutory or case law that would allow the Secretary to delegate his authority to sign the waivers under section 903(d)(2)(B)(iii).

The Joint Committee's discussion of the provision does not indicate one way or the other whether Congress intended for the Secretary of Treasury to personally make these good faith

Case 1:07-cv-00750-CKK    Document 1    Filed 04/24/2007    Page 63 of 90

determinations. (See Technical Explanation of the Revenue Provisions of H.R. 4440, The "Gulf Zone Opportunity Zone Act of 2005", p.67) We note that the Joint Committee's discussion of the provision does refer to the "Secretary" not the "Secretary of the Treasury." If used in a Title 26 provision subject to section 7701(a), the use of the term Secretary in the legislative history might suggest an alternative reading if the statutory language were ambiguous. This is not a Title 26 provision, however, and the plain language of the statute does not appear ambiguous. It is our opinion based on that language that the Secretary of the Treasury must personally exercise this authority.

We can suggest that the Treasury Department seek a technical correction of this provision on the grounds that, despite the plain language, we believe that Congress may not have intended to prevent delegation of the authority. There is no assurance, however, that such a technical correction will occur or, if it does, that it will occur in time to resolve the immediate problems the Service faces in dealing with the many outstanding cases where settlements are pending.

You have also asked for our opinion regarding the scope of interest relief. We initially read section 903(d)(2)(B)(ii) of the AJCA as limited to those participating in the settlement initiative described in Announcement 2005-80. After further review of the legislation as it developed, however, we now conclude that a broader group of initiatives qualify, both those offered through published guidance and those select initiatives that were undertaken by directly contacting targeted groups of all known taxpayers who participated in a tax shelter promotion, but where the initiative was not formally published. In order to qualify under section 903(d)(2)(B)(ii)(II), "the taxpayer [must have] entered into a settlement agreement . . . as of January 23, 2006." To have entered into a settlement agreement, both parties must have reached a meeting of the minds. The Service's practice is to make settlement agreements, usually on Form 906, effective only when the taxpayer has first signed and the Service has countersigned the document. In addition, initiatives sometimes specifically require signed closing agreements to effectuate the settlement. Prior to that point, the agreements typically are not binding on the parties and either party can withdraw. Consequently, we believe that to qualify under this provision, taxpayers must have legally binding settlement agreements by January 23, 2006.

This writing may contain privileged information. Any unauthorized disclosure of this writing may undermine our ability to protect the privileged information. If disclosure is determined to be necessary, please contact this office for our views.

Please call (202) 622-7950 if you have any further questions.

---

Tax Analysts Information

**Code Section:** Section 6404 -- Abatements
**Geographic Identifier:** United States
**Subject Area:** Penalties
Tax system administration issues
**Institutional Author:** Internal Revenue Service
**Tax Analysts Document Number:** Doc 2006-5221 [PDF]
**Tax Analysts Electronic Citation:** 2006 TNT 53-28

http://services.taxanalysts.com/taxbase/tnt3.nsf/(Number/0D377C7DDFD62A8B85257135...    3/20/2006

☐━☐ Use this link to bookmark or link to this document

# EXHIBIT K



Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
202-862-5000  202-429-3301 Fax
www.caplindrysdale.com

202-862-5020 Direct
mso@capdale.com

July 5, 2006

**Via Facsimile & Overnight Mail**

Internal Revenue Service
Attn: Viris Pownell-Williams
7850 SW Sixth Court, Group 7955
Plantation, FL  33324

Re:  New Light Church World Outreach and Worship Centers, Inc.

Dear Ms. Pownell-Williams:

On behalf of New Light Church (the "Church"), I am writing to request that all outstanding Information Document Requests be reissued in the form of administrative summons. My client has requested this step to ensure that all of its procedural rights are protected.

On both March 22, 2006 and February 28, 2006, I wrote to express our concern regarding the IRS's compliance with the procedural safeguards imposed under section 7611 of the Internal Revenue Code to protect churches from unnecessary audits. For your reference, I have enclosed copies of both of these letters. Similar concerns were raised with you as early as January 2005. Specifically, we challenged the delegation of the "reasonable belief" determination at the church tax inquiry stage to relatively low-ranking IRS employees in violation of the clear legislative directive and intent of Section 7611(a)(2).

At issue here is the definition of an "appropriate high-level Treasury official" set forth in Section 7611(h)(7): "the Secretary of the Treasury or any delegate of the Secretary whose rank is no lower than that of a principal Internal Revenue officer for an internal revenue region." We remain troubled that, despite the clear language of the Code and regulations referencing the need for very high-level decision making in Section 7611 cases, the threshold "reasonable belief" determination apparently has been delegated to technical employees in the EO Division without any statutory amendment, or even the appropriate notice-and-comment

Caplin & Drysdale
C H A R T E R E D

Ms. Pownell-Williams
July 5, 2006
Page 2

process that is required for regulatory modifications.[1]  Moreover, the IRS has repeatedly refused to answer our request that the IRS revisit the threshold "reasonable belief" determination at an appropriate high-level within the agency, as required by law and regulation, and reconsider whether a church tax inquiry was ever, in fact, warranted in this case.

While the Church wants to cooperate with the IRS, we cannot in good conscience allow the IRS to continue to ignore the protections under section 7611 and to distract the Church from its daily operations. As you know, the Church has over 20,000 members, making it one of the largest African-American churches in the country, and is growing at a rate of 400-500 members per month. The Church has seven locations and over 170 full-time employees, 100 part-time employees and 1500 volunteer workers. The worship centers conduct regular religious services and host numerous other religious and community-oriented events throughout the week. Given the breadth of the Church's ministries, the Church can no longer afford to expend resources on the examination without some confirmation that the IRS has followed the appropriate procedural safeguards.

Accordingly, should the IRS wish to pursue this audit, we have no choice but to request that the remaining outstanding Information Document Requests be reissued in the form of an administrative summons. Moreover, we must inform you that it is likely the Church will respectfully decline to respond to a summons on the basis of our concerns regarding section 7611, specifically, as we explained in the attached letters, the fact that the determination of a reasonable belief that a church tax inquiry was necessary was made by a low-level IRS official. Moreover, should the government move to enforce the summons, we anticipate that we will raise the procedural defect in court. In the interest of cooperation, the Church is happy to consider settlement alternatives but will not be providing any additional information until the IRS corrects the procedural deficiencies arising under section 7611.

---

[1] We note that in a recently released legal memorandum, the Service acknowledged that there had been no delegation to either the Director of EO Examinations, much less to the low-level technical employee who signed the Church's notice of inquiry—both of which we objected to in our previous correspondence.  See ILM 200623061 (May 9, 2006). In ILM 200623061, the IRS explained that the delegation to the Director of EO Examinations never officially occurred; it resulted solely from a change to the Internal Revenue Manual. Obviously, this result is entirely inconsistent with section 7611, and the Church cannot tolerate either the initial delegation or the subsequent "designation."

Caplin & Drysdale
CHARTERED

Ms. Pownell-Williams
July 5, 2006
Page 3


Please feel free to call me (202/862-5020) if you have any questions.

Sincerely,

Marcus S. Owens

Enclosures
cc:    Malachi Johnson, Esq.
       David Epstein, Esq.



Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
202-862-5000  202-429-3301 Fax
www.caplindrysdale.com

202-862-5020 Direct
mso@capdale.com

March 22, 2006

**Via Facsimile & Overnight Mail**

Internal Revenue Service
Attn:  Viris Pownell-Williams
7850 SW Sixth Court, Group 7955
Plantation, FL  33324

Re:  New Light Church World Outreach and Worship Centers, Inc.

Dear Ms. Pownell-Williams:

On behalf of New Light Church (the "Church"), I am writing to bring to your attention a recent memorandum from Internal Revenue Service ("IRS") Chief Counsel that underscores the procedural flaws in this case.

On February 28, 2006, I wrote to express our concern regarding the IRS's compliance with the procedural safeguards imposed under section 7611 of the Internal Revenue Code to protect churches from unnecessary audits.  Similar concerns were raised with you as early as January 2005.  Specifically, we challenged the delegation of the "reasonable belief" determination at the church tax inquiry stage to relatively low-ranking IRS employees in violation of the clear legislative directive and intent of Section 7611(a)(2).  In this regard, we read with great interest a legal memorandum released this week in which IRS Chief Counsel appropriately concluded that the Treasury Secretary may not delegate the authority to make "good faith" exceptions under section 903(d) of the American Jobs Creation Act of 2004 ( the "Memorandum").  In the Memorandum (enclosed for your reference), the IRS takes a rightfully narrow approach to the issue, construing both Section 7701(a) and two conflicting off-Code provisions to exclude delegation of the Secretary's authority to sign waivers in that case.

Caplin & Drysdale
C H A R T E R E D

Ms. Pownell-Williams
March 22, 2006
Page 2

Applying these principles to our case, we must assume that Chief Counsel would take a similarly literal approach in the case of church tax inquiries, where the intent of the statute is to protect churches from unwarranted government intrusion in their affairs. At issue here is the definition of an "appropriate high-level Treasury official" set forth in Section 7611(h)(7): "the Secretary of the Treasury or any delegate of the Secretary whose rank is no lower than that of a principal Internal Revenue officer for an internal revenue region." The Memorandum appears to conflict with both of the delegations of the Secretary's "reasonable belief" determination in Section 7611 cases: (i) first, to the Director of EO Examinations who clearly is not a "principal" officer of the IRS, with duties and responsibilities comparable to those of a Regional Commissioner; and (ii) more recently, as part of the designation of Lapaula Johnson to act as the Director of EO Examinations for church tax inquiries and examinations under section 7611.

We remain troubled that, despite the clear language of the Code and regulations referencing the need for very high-level decision making in Section 7611 cases, the threshold "reasonable belief" determination apparently has been delegated to technical employees in the EO Division without any statutory amendment, or even the appropriate notice-and-comment process that is required for regulatory modifications. Should the IRS wish to proceed with an examination of the Church, we reiterate our request that the IRS revisit the threshold "reasonable belief" determination at an appropriate high-level within the agency, as required by law and regulation, and reconsider whether a church tax inquiry was ever, in fact, warranted in this case.

Please feel free to call me (202/862-5020) with any questions.

Sincerely,

Marcus. S. Owens

Enclosures

cc:    Malachi Johnson, Esq.
David Epstein, Esq.

# Treasury Secretary May Not Delegate Authority to Make Good Faith Exceptions

**In a legal memorandum, the Service has determined that the Treasury Secretary cannot delegate authority to waive the special interest and penalty rules applicable to reportable or listed transactions.**

**Citations:** ILM 200611001

**Date:** Jan. 20, 2006

Full Text Published by taxanalysts℠

UILC: 6404.00-00
Release Date: 3/17/2006

Date: January 20, 2006

Internal Revenue Service
Memorandum

CC:PA:APJP:B03:JAJebe
NOT-124546-05

To:
Jonathan R. Zelnik
Special Counsel to the Senior Counsel
(Office of the Chief Counsel)

Joseph F. Maselli
Area Counsel (Heavy Manufacturing & Transportation)
(Large & Mid-Size Business)

Kathy K. Petronchak
Director, Pre-Filing -- Technical Guidance
(Large & Mid-Size Business)

Walter L. Harris
Project Director (Field Specialists (Exec))
(Large & Mid-Size Business)

Louis R. Wells
Supervisory Internal Revenue Agent
(Natural Resources & Construction)
(Large & Mid-Size Business)

From:
Curt G. Wilson
Assistant Chief Counsel, Administrative

Provisions & Judicial Practice
(Procedure & Administration)

Subject:
Section 303(a)(2)(B)(iii) of GOZA and section 6404(g) of the Code

This Chief Counsel Advice responds to your e-mail dated January 11, 2006, with respect to section 303(a)(1) of the Gulf Opportunity Zone Act of 2006, Pub. L. 109-135, which modifies paragraph 2 of section 903(d) of the American Jobs Creation Act of 2004. This advice may not be used or cited as precedent.

## ISSUES

1. Whether the reference to the Secretary of the Treasury in this provision means that the Secretary must personally exercise the authority described in the statute.

2. What is the scope of interest relief for listed and certain reportable transactions under the amendments in section 303(a)(1) of GOZA?

## CONCLUSIONS

1. Given the plain language of the amendment to the off-Code provision, the Secretary of the Treasury must personally exercise the authority described.

2. To qualify for relief under the amendment to 903(d)(2)(B)(ii)(II), taxpayers must have legally binding settlement agreements by January 23, 2006.

## LAW AND ANALYSIS

Section 303(a) amends section 903(d)(2)(B)(iii) to read: "TAXPAYERS ACTING IN GOOD FAITH. -- The Secretary of the Treasury may except from the application of clause (i) any transaction in which the taxpayer has acted reasonably and in good faith." You have asked for our opinion whether the reference to the Secretary of the Treasury in this provision means that the Secretary must personally exercise the authority described in the statute. As you know, section 7701(a)(11)(A) provides that "the term `Secretary of the Treasury' means the Secretary of the Treasury, personally, and shall not include any delegate of his." Section 7701(a) applies only to Title 26, however. Because section 903(d) is an off-Code provision, section 7701(a) does not apply. We must, therefore, look instead to the language of the provision and apply the normal rules of statutory construction. We note that section 903(d)(2)(B)(iii) reads "[t]he Secretary of the Treasury may . . ." and the neighboring section 903(d)(2)(B)(ii) uses the term "[t]he Secretary of the Treasury or the Secretary's delegate . . ." (Emphasis added). The fact that Congress expressly provided for delegation by the Secretary of the Treasury in section 903(d)(2)(B)(ii) and did not do so in section 903(d)(2)(B(iii), is an indication that Congress consciously chose not to allow delegation in latter provision. Applying the rules of statutory construction, we conclude that the better interpretation of the term "Secretary of the Treasury" excludes a delegate. We have found no other statutory or case law that would allow the Secretary to delegate his authority to sign the waivers under section 903(d)(2)(B)(iii).

The Joint Committee's discussion of the provision does not indicate one way or the other whether Congress intended for the Secretary of Treasury to personally make these good faith

determinations. (See Technical Explanation of the Revenue Provisions of H.R. 4440, The "Gulf Zone Opportunity Act of 2005", p.67) We note that the Joint Committee's discussion of the provision does refer to the "Secretary" not the "Secretary of the Treasury." If used in a Title 26 provision subject to section 7701(a), the use of the term Secretary in the legislative history might suggest an alternative reading if the statutory language were ambiguous. This is not a Title 26 provision, however, and the plain language of the statute does not appear ambiguous. It is our opinion based on that language that the Secretary of the Treasury must personally exercise this authority.

We can suggest that the Treasury Department seek a technical correction of this provision on the grounds that, despite the plain language, we believe that Congress may not have intended to prevent delegation of the authority. There is no assurance, however, that such a technical correction will occur or, if it does, that it will occur in time to resolve the immediate problems the Service faces in dealing with the many outstanding cases where settlements are pending.

You have also asked for our opinion regarding the scope of interest relief. We initially read section 903(d)(2)(B)(ii) of the AJCA as limited to those participating in the settlement initiative described in Announcement 2005-80. After further review of the legislation as it developed, however, we now conclude that a broader group of initiatives qualify, both those offered through published guidance and those select initiatives that were undertaken by directly contacting targeted groups of all known taxpayers who participated in a tax shelter promotion, but where the initiative was not formally published. In order to qualify under section 903(d)(2)(B)(ii)(II), "the taxpayer [must have] entered into a settlement agreement . . . as of January 23, 2006." To have entered into a settlement agreement, both parties must have reached a meeting of the minds. The Service's practice is to make settlement agreements, usually on Form 906, effective only when the taxpayer has first signed and the Service has countersigned the document. In addition, initiatives sometimes specifically require signed closing agreements to effectuate the settlement. Prior to that point, the agreements typically are not binding on the parties and either party can withdraw. Consequently, we believe that to qualify under this provision, taxpayers must have legally binding settlement agreements by January 23, 2006.

This writing may contain privileged information. Any unauthorized disclosure of this writing may undermine our ability to protect the privileged information. If disclosure is determined to be necessary, please contact this office for our views.

Please call (202) 622-7950 if you have any further questions.

---

**Tax Analysts Information**

**Code Section:** Section 6404 -- Abatements
**Geographic Identifier:** United States
**Subject Area:** Penalties
Tax system administration issues
**Institutional Author:** Internal Revenue Service
**Tax Analysts Document Number:** Doc 2006-5221 [PDF]
**Tax Analysts Electronic Citation:** 2006 TNT 53-28

Use this link to bookmark or link to this document



Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
202-862-5000  202-429-3301 Fax
www.caplindrysdale.com

202-862-5020 Direct
MSO@capdale.com

February 28, 2006

<u>Via Facsimile (954-423-7780) and Federal Express</u>

Viris Pownell-Williams, Group 7955
Internal Revenue Service
TEGE Division, EO Examinations
7850 SW 6th Court, Room 360
Plantation, FL 33324

Re:  <u>New Light Church World Outreach and Worship Centers, Inc.</u>

Dear Ms. Pownell-Williams:

I am writing to express my concerns regarding several procedural issues relating to the examination of New Light Church. Specifically, it appears that the IRS has not complied with the requirements of section 7611 of the Internal Revenue Code.

The Church feels very strongly that all official procedures be followed in the conduct of its examination by the IRS. Of particular concern is the fact that it appears that the initial "reasonable belief" determination in its case was not made by the appropriate high level official. The regulations duly promulgated under section 7611 are clear that the decision is to be made by a Regional Commissioner or higher official. The authorization of the inquiry of the Church appears to have been signed by an official named "Lapaula Davis" for Ms. Rosie Johnson, the Director of EO Examinations. We can find no indication that the Treasury Regulations under section 7611 have been modified to authorize the Director of EO Examinations to make the "reasonable belief" determination, nor can we find any indication that the Director of EO Examinations is authorized to delegate that authority to a subordinate employee. Nevertheless, it appears that Ms. Rosie Johnson signed a "designation" on October 26, 2004 through which she impermissibly designated Lapaula Johnson to act at the Director of EO Examinations for church tax inquiries and examinations under section 7611. I have attached a copy of this "designation" for your reference. Because section 7611 is designed to protect churches from unnecessary and overreaching audits, these procedural defects are simply unacceptable and must be rectified.

Caplin&Drysdale
CHARTERED

- 2 -

We propose a conference call to discuss the status of the examination, the correction of the deficiencies, and a possible resolution of the issues. Should you choose to proceed with the examination, we trust that the IRS will be willing to voluntarily correct the defects discussed above. In particular, section 301.7611-1, A-17 of the Treasury Regulations prohibits the IRS from proceeding until violations arising under section 7611 are corrected; accordingly, we respectfully request that the Service reissue the authorization of inquiry under section 7611. We assume that any such authorization would, of course, comply with the heightened requirements of section 301.7611-1, A-16 of the Treasury Regulations regarding multiple examinations of a single church within a five year period.

Furthermore, I have received a copy of your latest requests for information from New Light Church (Information Document Requests # 28, # 29 and # 30) relating to aircraft. I note that IDR # 29 requests the total acquisition cost of the aircraft, which was already provided to you in response to IDR # 8 on July 28, 2005. Additionally, my client is growing concerned about the length of time that the examination is taking. In the future, please direct all communications to me so that I may ensure the examination proceeds in a timely fashion.

At your convenience, please contact me at 202-862-5020 to discuss these arrangements.

Sincerely,

Marcus S. Owens

cc: Commissioner, Tax-Exempt and Government Entities
    Director, Exempt Organizations Division
    Director, EO Examinations

# EXHIBIT L



**Caplin & Drysdale**
A T T O R N E Y S

Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
202-862-5000  202-429-3301 Fax
www.caplindrysdale.com

202-862-5020 Direct
mso@capdale.com

January 31, 2006

**Via Overnight Mail**

Internal Revenue Service
Attn:  Viris Pownell-Williams
7850 SW Sixth Court, Group 7955
Plantation, FL  33324

Re:  New Light Church World Outreach and Worship Centers, Inc.

Dear Ms. Pownell-Williams:

We are in receipt of your request to extend the statute of limitations for the examination of New Light Church World Outreach and Worship Centers, Inc. (the "Church").  As you know, we have expressed our concerns regarding the Internal Revenue Service's compliance with the procedural requirements of section 7611 of the Code on a number of occasions throughout the course of the examination of the Church.  For your convenience, we have attached copies of this correspondence.  Despite our repeated requests for the IRS to remedy the procedural errors in this case and to have an appropriate high-level Treasury official authorize the church tax inquiry, our concerns have never been answered.

While we appreciate that the 2-year statute of limitations regarding the examination is approaching, we cannot in good conscience agree to extend the statute unless and until the IRS has complied with section 7611.  At this point, the Church believes that it is crucial that it not take any action that could be perceived as acquiescing to the materially flawed initiation of the church tax inquiry, and accordingly, the examination.  Therefore, we again respectfully request that an appropriate high-level Treasury official make the reasonable belief determination required by section 7611(a).  Once this procedural error has been corrected, the Church will be happy to consider an extension of the statute of limitations.

Caplin & Drysdale
C H A R T E R E D

- 2 -

If you would like to discuss this issue in greater detail, please call me at 202-862-5020.

Sincerely,

Marcus S. Owens

Enclosures

cc: Malachi Johnson



**Caplin & Drysdale**
A T T O R N E Y S

Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
202-862-5000  202-429-3301 Fax
www.caplindrysdale.com

202-862-5020 Direct
MSO@capdale.com

February 28, 2006

<u>Via Facsimile (954-423-7780) and Federal Express</u>

Viris Pownell-Williams, Group 7955
Internal Revenue Service
TEGE Division, EO Examinations
7850 SW 6th Court, Room 360
Plantation, FL 33324

Re: <u>New Light Church World Outreach and Worship Centers, Inc.</u>

Dear Ms. Pownell-Williams:

I am writing to express my concerns regarding several procedural issues relating to the examination of New Light Church. Specifically, it appears that the IRS has not complied with the requirements of section 7611 of the Internal Revenue Code.

The Church feels very strongly that all official procedures be followed in the conduct of its examination by the IRS. Of particular concern is the fact that it appears that the initial "reasonable belief" determination in its case was not made by the appropriate high level official. The regulations duly promulgated under section 7611 are clear that the decision is to be made by a Regional Commissioner or higher official. The authorization of the inquiry of the Church appears to have been signed by an official named "Lapaula Davis" for Ms. Rosie Johnson, the Director of EO Examinations. We can find no indication that the Treasury Regulations under section 7611 have been modified to authorize the Director of EO Examinations to make the "reasonable belief" determination, nor can we find any indication that the Director of EO Examinations is authorized to delegate that authority to a subordinate employee. Nevertheless, it appears that Ms. Rosie Johnson signed a "designation" on October 26, 2004 through which she impermissibly designated Lapaula Johnson to act at the Director of EO Examinations for church tax inquiries and examinations under section 7611. I have attached a copy of this "designation" for your reference. Because section 7611 is designed to protect churches from unnecessary and overreaching audits, these procedural defects are simply unacceptable and must be rectified.

Caplin&Drysdale
CHARTERED
- 2 -

We propose a conference call to discuss the status of the examination, the correction of the deficiencies, and a possible resolution of the issues. Should you choose to proceed with the examination, we trust that the IRS will be willing to voluntarily correct the defects discussed above. In particular, section 301.7611-1, A-17 of the Treasury Regulations prohibits the IRS from proceeding until violations arising under section 7611 are corrected; accordingly, we respectfully request that the Service reissue the authorization of inquiry under section 7611. We assume that any such authorization would, of course, comply with the heightened requirements of section 301.7611-1, A-16 of the Treasury Regulations regarding multiple examinations of a single church within a five year period.

Furthermore, I have received a copy of your latest requests for information from New Light Church (Information Document Requests # 28, # 29 and # 30) relating to aircraft. I note that IDR # 29 requests the total acquisition cost of the aircraft, which was already provided to you in response to IDR # 8 on July 28, 2005. Additionally, my client is growing concerned about the length of time that the examination is taking. In the future, please direct all communications to me so that I may ensure the examination proceeds in a timely fashion.

At your convenience, please contact me at 202-862-5020 to discuss these arrangements.

Sincerely,

Marcus S. Owens

cc: Commissioner, Tax-Exempt and Government Entities
    Director, Exempt Organizations Division
    Director, EO Examinations

**Caplin & Drysdale**
A T T O R N E Y S

Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
202-862-5000  202-429-3301 Fax
www.caplindrysdale.com

202-862-5020 Direct
mso@capdale.com

March 22, 2006

**Via Facsimile & Overnight Mail**

Internal Revenue Service
Attn: Viris Pownell-Williams
7850 SW Sixth Court, Group 7955
Plantation, FL 33324

Re:  New Light Church World Outreach and Worship Centers, Inc.

Dear Ms. Pownell-Williams:

On behalf of New Light Church (the "Church"), I am writing to bring to your attention a recent memorandum from Internal Revenue Service ("IRS") Chief Counsel that underscores the procedural flaws in this case.

On February 28, 2006, I wrote to express our concern regarding the IRS's compliance with the procedural safeguards imposed under section 7611 of the Internal Revenue Code to protect churches from unnecessary audits. Similar concerns were raised with you as early as January 2005. Specifically, we challenged the delegation of the "reasonable belief" determination at the church tax inquiry stage to relatively low-ranking IRS employees in violation of the clear legislative directive and intent of Section 7611(a)(2). In this regard, we read with great interest a legal memorandum released this week in which IRS Chief Counsel appropriately concluded that the Treasury Secretary may not delegate the authority to make "good faith" exceptions under section 903(d) of the American Jobs Creation Act of 2004 ( the "Memorandum"). In the Memorandum (enclosed for your reference), the IRS takes a rightfully narrow approach to the issue, construing both Section 7701(a) and two conflicting off-Code provisions to exclude delegation of the Secretary's authority to sign waivers in that case.

Caplin & Drysdale
CHARTERED

Ms. Pownell-Williams
March 22, 2006
Page 2

Applying these principles to our case, we must assume that Chief Counsel would take a similarly literal approach in the case of church tax inquiries, where the intent of the statute is to protect churches from unwarranted government intrusion in their affairs. At issue here is the definition of an "appropriate high-level Treasury official" set forth in Section 7611(h)(7): "the Secretary of the Treasury or any delegate of the Secretary whose rank is no lower than that of a principal Internal Revenue officer for an internal revenue region." The Memorandum appears to conflict with both of the delegations of the Secretary's "reasonable belief" determination in Section 7611 cases: (i) first, to the Director of EO Examinations who clearly is not a "principal" officer of the IRS, with duties and responsibilities comparable to those of a Regional Commissioner; and (ii) more recently, as part of the designation of Lapaula Johnson to act as the Director of EO Examinations for church tax inquiries and examinations under section 7611.

We remain troubled that, despite the clear language of the Code and regulations referencing the need for very high-level decision making in Section 7611 cases, the threshold "reasonable belief" determination apparently has been delegated to technical employees in the EO Division without any statutory amendment, or even the appropriate notice-and-comment process that is required for regulatory modifications. Should the IRS wish to proceed with an examination of the Church, we reiterate our request that the IRS revisit the threshold "reasonable belief" determination at an appropriate high-level within the agency, as required by law and regulation, and reconsider whether a church tax inquiry was ever, in fact, warranted in this case.

Please feel free to call me (202/862-5020) with any questions.

Sincerely,

Marcus. S. Owens

Enclosures

cc:    Malachi Johnson, Esq.
       David Epstein, Esq.

# Treasury Secretary May Not Delegate Authority to Make Good Faith Exceptions

**In a legal memorandum, the Service has determined that the Treasury Secretary cannot delegate authority to waive the special interest and penalty rules applicable to reportable or listed transactions.**

**Citations:** ILM 200611001

**Date:** Jan. 20, 2006

Full Text Published by **taxanalysts**℠

UILC: 6404.00-00
Release Date: 3/17/2006

Date: January 20, 2006

Internal Revenue Service
Memorandum

CC:PA:APJP:B03:JAJebe
NOT-124546-05

To:
Jonathan R. Zelnik
Special Counsel to the Senior Counsel
(Office of the Chief Counsel)

Joseph F. Maselli
Area Counsel (Heavy Manufacturing & Transportation)
(Large & Mid-Size Business)

Kathy K. Petronchak
Director, Pre-Filing -- Technical Guidance
(Large & Mid-Size Business)

Walter L. Harris
Project Director (Field Specialists (Exec))
(Large & Mid-Size Business)

Louis R. Wells
Supervisory Internal Revenue Agent
(Natural Resources & Construction)
(Large & Mid-Size Business)

From:
Curt G. Wilson
Assistant Chief Counsel, Administrative

Provisions & Judicial Practice
(Procedure & Administration)

Subject:
Section 303(a)(2)(B)(iii) of GOZA and section 6404(g) of the Code

This Chief Counsel Advice responds to your e-mail dated January 11, 2006, with respect to section 303(a)(1) of the Gulf Opportunity Zone Act of 2006, Pub. L. 109-135, which modifies paragraph 2 of section 903(d) of the American Jobs Creation Act of 2004. This advice may not be used or cited as precedent.

## ISSUES

1. Whether the reference to the Secretary of the Treasury in this provision means that the Secretary must personally exercise the authority described in the statute.

2. What is the scope of interest relief for listed and certain reportable transactions under the amendments in section 303(a)(1) of GOZA?

## CONCLUSIONS

1. Given the plain language of the amendment to the off-Code provision, the Secretary of the Treasury must personally exercise the authority described.

2. To qualify for relief under the amendment to 903(d)(2)(B)(ii)(II), taxpayers must have legally binding settlement agreements by January 23, 2006.

## LAW AND ANALYSIS

Section 303(a) amends section 903(d)(2)(B)(iii) to read: "TAXPAYERS ACTING IN GOOD FAITH. -- The Secretary of the Treasury may except from the application of clause (i) any transaction in which the taxpayer has acted reasonably and in good faith." You have asked for our opinion whether the reference to the Secretary of the Treasury in this provision means that the Secretary must personally exercise the authority described in the statute. As you know, section 7701(a)(11)(A) provides that "the term `Secretary of the Treasury' means the Secretary of the Treasury, personally, and shall not include any delegate of his." Section 7701(a) applies only to Title 26, however. Because section 903(d) is an off-Code provision, section 7701(a) does not apply. We must, therefore, look instead to the language of the provision and apply the normal rules of statutory construction. We note that section 903(d)(2)(B)(iii) reads "[t]he Secretary of the Treasury may . . ." and the neighboring section 903(d)(2)(B)(ii) uses the term "[t]he Secretary of the Treasury or the Secretary's delegate . . ." (Emphasis added). The fact that Congress expressly provided for delegation by the Secretary of the Treasury in section 903(d)(2)(B)(ii) and did not do so in section 903(d)(2)(B)(iii), is an indication that Congress consciously chose not to allow delegation in latter provision. Applying the rules of statutory construction, we conclude that the better interpretation of the term "Secretary of the Treasury" excludes a delegate. We have found no other statutory or case law that would allow the Secretary to delegate his authority to sign the waivers under section 903(d)(2)(B)(iii).

The Joint Committee's discussion of the provision does not indicate one way or the other whether Congress intended for the Secretary of Treasury to personally make these good faith

determinations. (See Technical Explanation of the Revenue Provisions of H.R. 4440, The "Gulf Zone Opportunity Zone Act of 2005", p.67) We note that the Joint Committee's discussion of the provision does refer to the "Secretary" not the "Secretary of the Treasury." If used in a Title 26 provision subject to section 7701(a), the use of the term Secretary in the legislative history might suggest an alternative reading if the statutory language were ambiguous. This is not a Title 26 provision, however, and the plain language of the statute does not appear ambiguous. It is our opinion based on that language that the Secretary of the Treasury must personally exercise this authority.

We can suggest that the Treasury Department seek a technical correction of this provision on the grounds that, despite the plain language, we believe that Congress may not have intended to prevent delegation of the authority. There is no assurance, however, that such a technical correction will occur or, if it does, that it will occur in time to resolve the immediate problems the Service faces in dealing with the many outstanding cases where settlements are pending.

You have also asked for our opinion regarding the scope of interest relief. We initially read section 903(d)(2)(B)(ii) of the AJCA as limited to those participating in the settlement initiative described in Announcement 2005-80. After further review of the legislation as it developed, however, we now conclude that a broader group of initiatives qualify, both those offered through published guidance and those select initiatives that were undertaken by directly contacting targeted groups of all known taxpayers who participated in a tax shelter promotion, but where the initiative was not formally published. In order to qualify under section 903(d)(2) (B)(ii)(II), "the taxpayer [must have] entered into a settlement agreement . . . as of January 23, 2006." To have entered into a settlement agreement, both parties must have reached a meeting of the minds. The Service's practice is to make settlement agreements, usually on Form 906, effective only when the taxpayer has first signed and the Service has countersigned the document. In addition, initiatives sometimes specifically require signed closing agreements to effectuate the settlement. Prior to that point, the agreements typically are not binding on the parties and either party can withdraw. Consequently, we believe that to qualify under this provision, taxpayers must have legally binding settlement agreements by January 23, 2006.

This writing may contain privileged information. Any unauthorized disclosure of this writing may undermine our ability to protect the privileged information. If disclosure is determined to be necessary, please contact this office for our views.

Please call (202) 622-7950 if you have any further questions.

---

**Tax Analysts Information**

**Code Section:** Section 6404 -- Abatements
**Geographic Identifier:** United States
**Subject Area:** Penalties
Tax system administration issues
**Institutional Author:** Internal Revenue Service
**Tax Analysts Document Number:** Doc 2006-5221 [PDF]
**Tax Analysts Electronic Citation:** 2006 TNT 53-28

⊡━⊡ Use this link to bookmark or link to this document



Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
202-862-5000  202-429-3301 Fax
www.caplindrysdale.com

202-862-5020 Direct
mso@capdale.com

July 5, 2006

**Via Facsimile & Overnight Mail**

Internal Revenue Service
Attn: Viris Pownell-Williams
7850 SW Sixth Court, Group 7955
Plantation, FL 33324

Re:  New Light Church World Outreach and Worship Centers, Inc.

Dear Ms. Pownell-Williams:

On behalf of New Light Church (the "Church"), I am writing to request that all outstanding Information Document Requests be reissued in the form of administrative summons. My client has requested this step to ensure that all of its procedural rights are protected.

On both March 22, 2006 and February 28, 2006, I wrote to express our concern regarding the IRS's compliance with the procedural safeguards imposed under section 7611 of the Internal Revenue Code to protect churches from unnecessary audits. For your reference, I have enclosed copies of both of these letters. Similar concerns were raised with you as early as January 2005. Specifically, we challenged the delegation of the "reasonable belief" determination at the church tax inquiry stage to relatively low-ranking IRS employees in violation of the clear legislative directive and intent of Section 7611(a)(2).

At issue here is the definition of an "appropriate high-level Treasury official" set forth in Section 7611(h)(7): "the Secretary of the Treasury or any delegate of the Secretary whose rank is no lower than that of a principal Internal Revenue officer for an internal revenue region." We remain troubled that, despite the clear language of the Code and regulations referencing the need for very high-level decision making in Section 7611 cases, the threshold "reasonable belief" determination apparently has been delegated to technical employees in the EO Division without any statutory amendment, or even the appropriate notice-and-comment

Caplin&Drysdale
C H A R T E R E D

Ms. Pownell-Williams
July 5, 2006
Page 2

process that is required for regulatory modifications.[1]  Moreover, the IRS has repeatedly refused to answer our request that the IRS revisit the threshold "reasonable belief" determination at an appropriate high-level within the agency, as required by law and regulation, and reconsider whether a church tax inquiry was ever, in fact, warranted in this case.

While the Church wants to cooperate with the IRS, we cannot in good conscience allow the IRS to continue to ignore the protections under section 7611 and to distract the Church from its daily operations. As you know, the Church has over 20,000 members, making it one of the largest African-American churches in the country, and is growing at a rate of 400-500 members per month.  The Church has seven locations and over 170 full-time employees, 100 part-time employees and 1500 volunteer workers.  The worship centers conduct regular religious services and host numerous other religious and community-oriented events throughout the week. Given the breadth of the Church's ministries, the Church can no longer afford to expend resources on the examination without some confirmation that the IRS has followed the appropriate procedural safeguards.

Accordingly, should the IRS wish to pursue this audit, we have no choice but to request that the remaining outstanding Information Document Requests be reissued in the form of an administrative summons.  Moreover, we must inform you that it is likely the Church will respectfully decline to respond to a summons on the basis of our concerns regarding section 7611, specifically, as we explained in the attached letters, the fact that the determination of a reasonable belief that a church tax inquiry was necessary was made by a low-level IRS official. Moreover, should the government move to enforce the summons, we anticipate that we will raise the procedural defect in court.  In the interest of cooperation, the Church is happy to consider settlement alternatives but will not be providing any additional information until the IRS corrects the procedural deficiencies arising under section 7611.

---

[1] We note that in a recently released legal memorandum, the Service acknowledged that there had been no delegation to either the Director of EO Examinations, much less to the low-level technical employee who signed the Church's notice of inquiry—both of which we objected to in our previous correspondence.  See ILM 200623061 (May 9, 2006). In ILM 200623061, the IRS explained that the delegation to the Director of EO Examinations never officially occurred; it resulted solely from a change to the Internal Revenue Manual. Obviously, this result is entirely inconsistent with section 7611, and the Church cannot tolerate either the initial delegation or the subsequent "designation."

Caplin & Drysdale
CHARTERED

Ms. Pownell-Williams
July 5, 2006
Page 3


Please feel free to call me (202/862-5020) if you have any questions.

Sincerely,

Marcus S. Owens

Enclosures
cc:    Malachi Johnson, Esq.
       David Epstein, Esq.

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| NEW LIGHT CHURCH WORLD OUTREACH AND WORSHIP CENTERS, INC. | MARK W. EVERSON, in his official capacity as Commissioner, IRS; KEVIN BROWN, in his official capacity as Deputy Commissioner for Services and Enforcement, IRS; and the INTERNAL REVENUE SERVICE |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF     88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Christopher S. Rizek
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Suite 1100
Washington, DC 20005
(202) 862-8852

ATTORNEYS (IF KNOWN)

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

◉ 2 U.S. Government Defendant

○ 3 Federal Question (U.S. Government Not a Party)

○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

◉ **E. General Civil (Other)**     OR     ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. Section 1651. Plaintiff is seeking a Writ of Mandamus under the All Writs Act.

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____ Check YES only if demanded in complaint    JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE _4/24/07_    SIGNATURE OF ATTORNEY OF RECORD _Christopher J. H._

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.